**Joe Henry DeRUSSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56070.**

Court of Criminal Appeals of Texas, Panel No. 3.

April 11, 1979.

Robert D. Thorpe and Michael G. Morris, Corpus Christi, for appellant.

William B. Mobley, Jr., Dist. Atty. and Eric G. Brown, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for murder. The punishment is imprisonment for twenty-six years.

Appellant contends that: (1) a psychiatrist was erroneously permitted to testify to statements made by appellant during a competency examination; (2) the prosecutor improperly referred to the order of the trial court finding that appellant's confession was voluntary; (3) testimony concerning an unrelated crime was erroneously introduced; (4) the prosecutor offered in evidence photographs which had previously been ruled inadmissible; (5) evidence as to appellant's lack of a prior criminal record was erroneously excluded; (6) the trial court erroneously refused appellant's requested charges on assault and on the presumption of innocence; (7) the trial court erroneously charged the jury on the offense of injury to a child; (8) the prosecutor engaged in improper jury argument; (9) the district attorney should have been required to honor a pretrial plea bargain agreement; and (10) the State should not have been allowed to have two attorneys present its case.

The evidence establishes that appellant and his wife fatally beat their three-year-old son with their hands, a board, a belt, and an electric cord.[1] The child was pronounced dead on arrival at the Robstown Riverside Hospital on October 4, 1975. Two of the nurses on duty in the emergency room at the time testified that the child appeared to have been run over by a car.

The Nueces County Medical Examiner testified that:

" . . . the child was severely beaten. I estimated that about seventy-five percent of the body surface was covered with contusions and bruises and that the bruising was from the top of the head to the tops of the feet. There was literally no area spared of the bruising . . ."

Asked the cause of death, the Medical Examiner testified:

". . . the underlying cause of death was extensive contusions and ecchymoses of the body.

"Q. In layman's terms, what does that mean?

"A. He was beaten to death."

Appellant's defense was that he was insane at the time of the offense. Dr. Henry

---

1. In a separate proceeding, Elsa DeRusse entered a plea of guilty to the offense of injury to a child, and was sentenced to imprisonment for twenty years.

Hammer, a clinical psychologist, testified that he had examined appellant in October, 1975. He described his conclusions, based upon this examination, as follows:

"I saw Mr. deRusse as suffering from a paranoid state which is transitory, psychotic episode of indeterminate length. This means that for a specific part of his life, Mr. deRusse was out of contact with reality. The greater portion of his life he was in contact with reality and continues to be in contact with reality. That is, he would be perceived by most reasonable people to be okay, to not be crazy. However, when you get into that segment of his life that encapsulates a delusional belief system, his perception of the situation and yours might be very radically different. His area of interest, which was delusional, happened to be in the sphere of religion. He believed—and I haven't spoken with him since—October, '75, so I can't say what his belief system might still be, but at that time he believed very deeply in possession by demons. This gets into a religious area that is tricky to deal with because a significant portion of the population, maybe small in terms of percentage but large in terms of numbers, also believed in possession by spirits. Where it gets to be important to distinguish is his particular elaboration of those beliefs, how they were in his mind. He had a very concrete belief that his son was possessed by a spirit, by a demon, that his son was acting not on his own but at the behest of a spirit, a demon.

"Now, insofar as you and I would not agree that that is in fact what has been happening, he was out of contact with reality. Now that is very superficially what went on. What we are dealing with here is a whole complex personality on which superimposed is this basic disorder. This disorder which is of indeterminant length but of serious proportion . . ."

Dr. Hammer testified that appellant did not intend to harm his son when he beat him:

. . . He was busy attacking the behavior of a demon, in his own mind, he

was. As extra baggage to that, as something that happened inadvertently, he—undesirably, perhaps, undesirably is a better term, he was also causing physical harm to his son. He saw that as very undesirable. He did not want to cause harm to the son. He did want to correct this demonic behavior he perceived."

Dr. Hammer testified that, in his opinion, appellant's delusional belief that his son was possessed by a demon was a mental disease or defect and appellant, as a result, did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law. V.T.C.A. Penal Code, Sec. 8.01.

In rebuttal, the State called Dr. Joel Kutnick, a psychiatrist who had been appointed by the trial court to examine appellant as to his competence to stand trial and his sanity at the time of the offense. Art. 46.02, Sec. 3, and Art. 46.03, Sec. 3, V.A.C.C.P. Dr. Kutnick testified that appellant had not beaten his son to get rid of a demon, but as means of discipline:

". . . [A]s I see the case, the religious issue, in one way, is kind of a red herring because Mr. deRusse himself doesn't feel or doesn't in any way say that the reason he was disciplining his child was because he was trying to get rid of the demon. He was doing it as a way of trying to teach his boy the correct way of behaving and in his own mind felt that he was doing the right kind of thing in terms of bringing up his son. The religious issue is kind of, wasn't the kind of thing that motivated him to act in terms of delivering punishment to his son at all."

Moreover, Dr. Kutnick did not believe that appellant's religious beliefs constituted a mental disease or defect. He expressed his disagreement with Dr Hammer as follows:

"Dr. Hammer feels . . . that because his religious beliefs are such that a majority of the population don't have the strong conviction or as a bizarre kinds of things, like demon possession and seeing smoke arise from the boy's body, at one

time, that this represents a psychosis, a mental illness, a paranoid state. I don't see this as a mental illness. I think one has to be very careful when one gets into the area of religion and calling people mentally ill. Many, many people have all kinds of religious beliefs . . . They are not sick in the psychiatric sense, they are only caught up in their own cultural beliefs. I feel that the way Mr. de Russe presents with his rational thinking and being able to explain, if you accept his basic premises that there is a good and evil in the world and that the evil is because of Satan and his henchmen demons and good comes out of the world because of God . . ., if you accept all of those basic tenets, that what he says and how he views things makes perfect sense and is not illogical at all, if you accept those tenets. That to me is not mental illness . . ."

As a basis for his testimony, Dr. Kutnick described the history of the case as related to him by appellant during the course of his examination. Most of this testimony was a repetition of testimony by other witnesses, including witnesses called by appellant, but this testimony also included certain facts which were not otherwise in evidence. Specifically, Dr. Kutnick testified that appellant had told him that he had burned the soles of his son's feet with matches; that appellant and his wife had poured jalapeno pepper juice in the boy's eyes; and that on the night he died, the child had been left tied to a door so that he could not raid the refrigerator, a habit which his parents were trying to break.

Prior to Dr. Kutnick's testimony, a discussion as to the admissibility of any statements made by appellant during the doctor's examination was held outside the presence of the jury. At that time, appellant contended, as he does now on appeal, that such statements were inadmissible under the terms of Art. 46.02, Sec. 3(f), as it read at the time of the trial.[2] The trial court overruled appellant's objection, and held that Dr. Kutnick could testify as to the contents of his report.

Art. 46.02, Sec. 3(g), supra, reads:

"No statement made by the defendant during the examination or hearing on his competency to stand trial may be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding."

There is no comparable provision in Art. 46.03, supra, relating to examinations on the issue of sanity at the time of the offense.

Art. 46.03, Sec. 3(g), V.A.C.C.P., provides that experts appointed to examine a defendant with regard to the insanity defense may also examine the defendant with regard to his competence to stand trial. Appellant's pretrial motion for a psychiatric examination, which is in the record, expressly requests such a dual purpose examination, and the order appointing Dr. Kutnick directs that he conduct such an examination.

■ We are presented with the question of whether Art. 46.02, Sec. 3(g), supra, applies to statements made by a defendant during an examination pursuant to Art. 46.03, Sec. 3(g), supra. We hold that it does not.

Any psychiatric examination with regard to the defendant's sanity at the time of the offense, and any testimony by the psychiatrist based on that examination, must necessarily deal with the defendant's conduct, and his perception thereof, at the time of the offense. The statements of the defendant to the psychiatrist concerning that conduct are, therefore, highly probative on the issue of the insanity defense. As a consequence, Art. 46.03, Sec. 3, V.A.C.C.P., contains no prohibition against the use of the defendant's statements at his trial similar to the prohibition found in Art. 46.02, Sec. 3(g), supra.

2. In 1977, after appellant's trial, Subsection 3(f) of Art. 46.02, V.A.C.C.P., was relettered as Subsection 3(g); the text was not changed.

We can perceive of no reason to apply Art. 46.02, Sec. 3(g), so as to forbid the trial use, relative to the sanity defense, of the defendant's statements to the psychiatrist during a combined competence/sanity examination pursuant to Art. 46.03, Sec. 3(g), supra. Psychiatric testimony with regard to the defendant's sanity at the time of the offense would hardly be possible if statements by the defendant during his examination were inadmissible, and the jury would be deprived of valuable evidence relative to the insanity defense. Moreover, to allow the statements of the defendant during an Art. 46.03, Sec. 3(g), examination to be admitted in evidence at his trial causes no unique prejudice to the defendant; he is in precisely the same position as any other defendant who is examined with regard to the insanity defense.

Our holding in this case is not in conflict with the opinion in *Ballard v. State,* 519 S.W.2d 426 (Tex.Cr.App.1975). That opinion was written prior to the enactment of Art. 46.03, supra. Furthermore, the predecessor to Art. 46.02, Sec. 3(g), as it read at that time, provided that:

"No statement made by the defendant during examination into his competency shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding *no matter under what circumstance such examination takes place.*" (Emphasis added.)

The emphasized words were deleted from what is now Art. 46.02, Sec. 3(g), in 1975, the year Art. 46.03 was enacted.

■ Appellant gave a written statement to the police on the morning the child died. This statement reads, in part, as follows:

"I have been spanking the boy for about two years whenever he wouldn't mind or started crying for no reason at all. I was trying to discipline him . .

"I got off work on 10–3–75 and I spanked him, I had a wooden paddle, a belt, and I also used my hand. This was about 6:00 p. m. to about 7:00 p. m. I don't remember why I spanked him.

"He wouldn't get up this morning but I only spanked him lightly with my hand. I then told him to lie down on the floor, and when I came back he wasn't breathing. I have spanked him with the same board and belt before, but he always came out of it. I have never spanked him as hard as I did yesterday."

Pursuant to Art. 38.22, V.A.C.C.P., a pretrial hearing was held to determine the voluntariness of this statement. Following this hearing, the trial court entered a written order finding that the statement had been voluntarily given, and the statement was subsequently admitted in evidence at appellant's trial.

During appellant's examination of Dubois Williams, another psychologist called by the defense, the following exchange took place:

"Q. After spending the amount of time with Mr. deRusse and learning what you have of Mr. deRusse, is the conduct of his calling the Elder, taking the child in his arms, going to the hospital, there being arrested and giving a confession, these circumstances, one, do you think that confession was given in such a way that it would be voluntary and, two, would he or could he have been also attempting to protect his wife or for some other reason giving the confession?

"MR. MOBLEY [Prosecuting Attorney]: I feel this would be a conclusion as far as this witness is concerned, concerning Mrs. de Russe, and further, I don't know if he is intending to encompass in his question whether or not it was voluntary—it has already been ruled to be voluntary and that he knowingly and intelligently waived his rights, Your Honor, so I don't know if he is getting to the confession or trying to get . . .

"MR. THORPE [Defense Attorney]: Your Honor, I am going to move for . . . .

"MR. MOBLEY: Your Honor . . .

"MR. THORPE: Your Honor, at this time I would move for a mistrial on the

basis of Mr. Mobley's last statement with regard to the confession. It is a jury question. It has not been so ruled on by the jury and I would, at this point in time, move for a mistrial in this case.

"THE COURT: I will overrule your objection and your request for a mistrial. I will sustain Mr. Mobley's objection insofar as your question includes the information about Mrs. de Russe. The rest of the question I will—if you can rephrase it, why then I will let Mrs. Williams answer that.

"MR. THORPE: Your Honor, I would like to request a jury instruction with reference to the remark Mr. Mobley made with reference to the confession.

"MR. MOBLEY: Your Honor, please.

"THE COURT: I am going to grant Mr. Thorpe's instruction to the jury. You will have to pass upon the admissibility and voluntariness of the confession. It has been admitted but you pass on the voluntariness of the confession in the Court's charge to you and I will instruct you to disregard the voluntariness statement by Mr. Mobley."

Art. 38.22, supra, provides that the order of the trial court finding the confession to be voluntary "shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner." There can be no doubt that the statement of the prosecutor objected to by appellant violated this provision of the statute.

In *Johnson v. State,* 510 S.W.2d 944 (Tex. Cr.App.1974), the prosecutor, in his argument to the jury, stated:

".  .  . if there is anything wrong at all with the confession, Judge Power wouldn't have let it into evidence .  ."

The trial court sustained the defendant's objection and instructed the jury to disregard the statement. This Court held that the argument, although error, did not require reversal, noting that the confession had been admitted in evidence in the jury's presence, that the argument did not refer to the separate hearing, the court's order, or any specific finding of the court regarding the voluntariness of the confession, and that the prosecutor subsequently told the jury, without objection, that when something is admitted in evidence the judge doesn't vouch for its truthfulness. This Court also noted that the defendant had not asked for a mistrial, thereby indicating his satisfaction with the instruction to disregard.

In the instant case, as in *Johnson,* the confession was admitted in evidence in the jury's presence, and the statement of the prosecutor did not refer to the separate hearing. Although the prosecutor in this case did specifically refer to two of the findings of the trial court regarding the confession, it should be noted that the statement was not made during jury argument, when the jury may be expected to be particularly attentive to the statements of the lawyers, but during an objection to testimony made in the midst of a trial which was filled with numerous and lengthy objections to testimony.

In *Johnson,* the trial court merely instructed the jury to disregard the prosecutor's statement. In the instant case, the court instructed the jury to disregard and informed them that it would be their duty to pass upon the voluntariness of the confession. As in *Johnson,* appellant requested no further relief *after* the trial court gave its admonishment to the jury. We hold that, under the circumstances of this case, the prosecutor's error does not require reversal of the judgment.

▆ Phil Westergren, the attorney who had originally been hired to defend appellant, was called by the defense to testify that in his opinion as a layman who had seen many persons who had been determined to be legally insane appellant was insane. During cross-examination by the prosecutor, for whom Westergren had worked before entering private practice, he was asked:

"Q. Do you think everybody that kills his baby is insane?

**232**

"A. No.

"Q. Judy Terry wasn't insane?

"A. Not in my opinion.

"Q. You prosecuted her?

"A. That's right.

"Q. She threw her baby up against the wall.

"A. The floor.

"Q. Against a hard object, resulting in its death?

"A. Yeah.

"Q. She killed two babies, didn't she?

"A. I heard she killed another one.

"Q. She got out of jail, went to another state, killed another baby, you heard that?

"A. I don't know the details of it.

"Q. You heard that's true?

"A. Yeah. I think I have, but all I know personally about Judy Terry is the first case, the one I prosecuted.

"Q. You heard since then she killed another baby?

"A. I have heard that, yeah."

Appellant contends that the trial court erred in admitting this testimony. However, appellant voiced no objection to the testimony, and nothing is presented for review. *Phillips v. State,* 511 S.W.2d 22 (Tex. Cr.App.1974); *Randolph v. State,* 499 S.W.2d 311 (Tex.Cr.App.1973).

■ Prior to the testimony of the medical examiner, and outside the presence of the jury, the trial court ruled that three of the seven photographs of the body of the deceased would not be admitted because they were repetitious. After the jury returned and the medical examiner began his testimony, the photographs were offered in evidence as follows:

"MR. MOBLEY: Your Honor, please, these photographs have heretofore been marked for identification as State's Exhibits 20 through 26.

"THE COURT: Mr. Thorpe, you have had an opportunity?

"MR. THORPE: Yes, Your Honor, I have had an opportunity to look at the pictures.

"THE COURT: Under the Court's prior ruling, the Exhibits 20 through 23 will be admitted and Exhibits 24 through 26 will be excluded.

"MR. THORPE: I would object for the record. I object to Mr. Mobley having offered the other three in the presence of the jury. I thought that was the reason we did it outside the jury, not to require me to—not to have the jury know that separate pictures have been excused by the Court."

Appellant contends, without citation of authority, that the prosecutor committed reversible error by offering the three photographs which had been previously determined to be inadmissible. He argues that the prosecutor's action invited the jury to speculate that the photographs were not admitted due to their gruesome nature.

Although there was no reason for the prosecutor to offer in evidence the photographs that had been ruled inadmissible, we cannot conclude that this error, if error it was, requires reversal of the judgment. Moreover, other than objecting for the record, appellant made no request for specific relief, such as a motion for mistrial or an admonitory instruction. This ground of error is overruled.

■ Psychologist Dubois Williams was recalled by appellant to testify at the punishment stage of the trial. In a multifarious ground of error, he complains of two instances where the trial court excluded certain testimony by Williams. The first instance occurred when appellant asked Williams:

"Mrs. Williams, in your investigation, and work with Mr. de Russe, have you had indication of his ever having any other prior criminal record whatsoever or involvement, criminal record, any involvement in criminal activities of any kind?

"MR. MOBLEY: This is improper form and would be leading.

"THE COURT: I will sustain.

"Q. Of your own knowledge, are you aware of any criminal record which Joe Henry de Russe has?

"MR. MOBLEY: Again, this is the improper form of this question. This is supposed to be a character witness. It is not formed in the legal manner.

"THE COURT: I am going to sustain the objection."

In his bill of exception, appellant again asked Williams if, to her knowledge, appellant had been previously convicted of a criminal offense. Williams answered:

". . . I did ask several direct questions about this to Joe and I think Mr. Mobley did make an objection, originally, about whether or not I had verified any information. My job was that of a psychologist, not an investigator, so what Joe said to me directly was that he had not been in trouble at all, even as a child in school, when a lot of kids get into minor scrapes. He was not in any of this kind of difficulty at any time and he made it very clear. I went back over this point not once or twice but several times, and he made it very clear this was the first time that he had been involved in any kind of serious legal or any other kind of legal act or behavior."

It is obvious that Williams' testimony was based on what appellant had told her about his past. As such, it was self-serving and hearsay. In a case similar to this, this Court held that such testimony was of no probative value, even though the testimony had been admitted without objection. *Mendoza v. State,* 522 S.W.2d 898 (Tex.Cr.App. 1975). Moreover, appellant's sister testified from her own knowledge that appellant had never before been arrested. The error, if any, in sustaining the prosecutor's objection to the appellant's questions was harmless. See *Preston v. State,* 481 S.W.2d 408 (Tex. Cr.App.1972); *Wagoner v. State,* 402 S.W.2d 738 (Tex.Cr.App.1966).

■ The second instance of which appellant complains occurred when he asked Williams if all cases of child abuse in Nueces County are reported. The State's objection that the question was irrelevant was sustained. In appellant's bill of exception, Williams testified that only one-tenth of all cases are reported, and that of the 5,000 cases reported in the previous year, 1,500 had been verified. Appellant argues that this evidence was relevant to his character, in that it shows that appellant's conduct was part of a widespread epidemic.

The trial court did not err in sustaining the State's objection. The county-wide total of crimes of the sort committed by a defendant is of slight relevance, if any, to the proper punishment to be assessed in a particular case. Furthermore, to have informed the jury of the widespread epidemic of child abuse might very well have led the jury to assess a harsher punishment.

■ The indictment in this case contains three counts. The first two counts allege the offense of murder under V.T.C.A. Penal Code, Sec. 19.02(a)(1) and (a)(2). The third count alleges the offense of injury to a child. V.T.C.A. Penal Code, Sec. 22.04. Although the State abandoned the third count, the trial court charged the jury on injury to a child, as well as on both forms of murder, voluntary manslaughter and aggravated assault.

Appellant contends that the trial court erred in charging on injury to a child, which he argues is not a lesser included offense of murder. The State argues that injury to a child is a lesser included offense of murder when the deceased is fourteen years of age or younger.

This Court need not decide this question. An error in the charge does not require a reversal of the judgment unless the error was calculated to injure the rights of the defendant, or denied him a fair and impartial trial. Art. 36.19, V.A.C.C.P. Appellant *was convicted of murder.* He does not suggest how the error, if any, in including the charge on injury to a child, a second degree felony, was calculated to injure his rights or otherwise denied him a fair trial. Since injury to appellant from the charge is not apparent, this ground of error is overruled.

■ Appellant contends the trial court erroneously refused his requested charge on assault. He argues that the charge was required by the evidence that he did not intend to harm or kill his son.

Appellant misapprehends the nature of the offense of assault. A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. V.T.C.A. Penal Code, Sec. 22.01(a)(1). A person commits an aggravated assault if he commits an assault and causes serious bodily injury to another. V.T.C.A. Penal Code, Sec. 22.02(a)(1). A bodily injury is serious if it causes death. V.T.C.A. Penal Code, Sec. 1.07(a)(34). Since it is undisputed that the deceased died as a result of bodily injuries inflicted by appellant, the trial court did not err in refusing to charge the jury on assault. See *Bowles v. State,* 550 S.W.2d 84 (Tex.Cr.App.1977); *Watson v. State,* 386 S.W.2d 803 (Tex.Cr.App.1965).

■ Appellant requested that the following charge be given to the jury:

"The burden of proof in all criminal cases rests upon the State throughout the trial, and never shifts to the Defendant.

"All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. In case you have a reasonable doubt as to Defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him."

This charge was refused, but the following paragraphs were included in the trial court's charge.

"You are instructed that the grand jury indictment is not evidence of guilt. It is the means whereby a Defendant is brought to trial in a felony prosecution. It is not evidence, nor can it be considered by you in passing upon the innocence or guilt of this Defendant.

"In all criminal cases the burden of proof is on the State. The Defendant in a criminal case is presumed to be innocent, until his guilt is established by legal evidence, beyond a reasonable doubt, and if you have a reasonable doubt as to the guilt of the Defendant, you must acquit him and say by your verdict 'not guilty.'"

The charge given by the trial court was substantially similar to that requested by appellant and adequately protected appellant's rights with regard to the matters contained therein. The trial court did not err in refusing the requested charge. See and cf. Art. 38.03, V.A.C.C.P., and V.T.C.A. Penal Code, Sec. 2.01.

■ In two multifarious grounds of error, appellant complains of four instances of allegedly improper jury argument by the prosecutor. The first instance is as follows:

". . . Aside from a few elementary instructions, over nine pages of the charge and the instructions of this jury is telling you how you can turn him loose or how you can find him guilty of a lesser offense.

"The law isn't fair to a Defendant, in a case such as this, when page after page after page tells you how you can turn this man loose or how you can find him guilty of a lesser offense other than murder of a three-year-old helpless, defenseless boy. Only two paragraphs in this charge are really, in my opinion, devoted to Joe de Russe, paragraph 7 and paragraph 11. You have got some forty-two paragraphs and to explain to you how you can find the killer and the murderer of Joey de Russe guilty of first degree murder those two paragraphs. Everything else in this charge and in these instructions are geared to show you how you can let him go or find him guilty of a lesser included offense, as the law describes it.

"MR. THORPE: Your Honor, I would object at this time. Mr. Mobley's argument is prejudicial, outside the record and I would object to his argument as being prejudicial to the defendant at this time.

"THE COURT: I will overrule the objection. Mr. Mobley, keep within the Court's charge."

Appellant's objection was general, and he did not request relief in the form of an instruction. Under the circumstances, nothing is presented for review. *Patterson v. State,* 509 S.W.2d 857 (Tex.Cr.App.1974).

■ Appellant contends that the prosecutor "unfairly characterized the charge of the Court" when he argued:

". . . You see what they can do? Do you see what a defendant can do? He can throw out what we call a shotgun defense, looking in that charge at the number of ways that you can go to find him . . .

"MR. THORPE: Your Honor, I'm going to object to that as being prejudicial and move for a mistrial at this time. Mr. Mobley is going outside the record, he is insinuating that the charge is not the Court's charge and I would object to the Court and move for a mistrial.

"THE COURT: Mr. Thorpe, I'm going to overrule your motion for a mistrial, but I want Mr. Mobley—The Court's charge is the one that is prepared and it is not the Defendant's charge, it is the Court's charge and the law applicable to this case and the jury will be so instructed."

In response to appellant's objection, the trial court instructed the jury that the court, and not the defendant, prepared the charge. This was sufficient to overcome any insinuation to the contrary in the prosecutor's statement, and the trial court did not abuse its discretion in overruling the motion for a mistrial.

■ Appellant contends that the prosecutor injected unsworn testimony when he stated:

"I submit that according to Dr. Kutnick, relating his history to this man, when he hung him on that door, when he was tied and when he made that last yell for help or mercy . . .

"MR. THORPE: Your Honor, that is so far outside the record, I am going to object. I move for a mistrial at this time. I ask the Court to instruct the jury. There is nothing in the record that says anything about . . .

"THE COURT: I am going to overrule the motion for mistrial.

"I do believe you are outside the record and I am going to sustain that objection, Mr. Mobley.

"MR. MOBLEY: All the evidence in this case, you heard Dr. Kutnick say that according to his history and talking to this man right here, that he tied him up, tied him to a door, and, this is in the record, then he went to him, after he heard him scream, and he was not moving. He was dead. How long did that child hang from that door under the evidence in this case. Before they ever went to see him, to find out he was dead, know what they were doing?"

The State argues that the prosecutor's argument was a reasonable deduction from Dr. Kutnick's testimony. Moreover, appellant failed to secure an instruction to disregard, and the prosecutor repeated in essence the same argument without objection. Under the circumstances, the error, if any, does not require reversal of the judgment. *Patterson v. State,* supra.

During his argument at the punishment stage, the prosecutor stated:

"MR. MOBLEY: You know you can't, you can't hang this man from a door like he did Joey.

"MR. THORPE: Your Honor, again, that is outside the record. There is nothing that says Joey was hung from the door and then died as a result from hanging from the door.

"MR. MOBLEY: The psychiatrist himself said he tied him to a door . . .

"THE COURT: The jury will remember the testimony that has been elicited from Dr. Kutnick. Continue, Mr. Mobley."

■ An objection to argument must be pressed to the point of procuring a ruling or the objection is waived. The statement by the trial court that the jury would remember the evidence is not sufficient to preserve error; nothing is presented for review. *Mayberry v. State,* 532 S.W.2d 80 (Tex.Cr.App.1976); *Nichols v. State,* 504 S.W.2d 462 (Tex.Cr.App.1974).

■ In his final ground of error with respect to the prosecutor's argument, appellant contends that the prosecutor attempted

to prejudice the jury against appellant's argument when he stated:

"Mr. Thorpe will have a chance to talk to you and I will have a chance to close after he talks to you, to comment on some of the things that he brings up, but keep in mind all of these things that he is going to try to cloud your mind with, all these theories and all the different ways that he is going to try to get you to find some reasonable doubt, it doesn't make any difference to him how big it is, so long as one of you has it.

"MR. THORPE: Your Honor, I'm going to object to that as being improper and I move for a mistrial, a jury instruction, and I request the Court to instruct Mr. Mobley if he continues his improper argument I request he be held in contempt of court.

"MR. MOBLEY: We have a right to comment on what the jury can do, according to the charge.

"THE COURT: Mr. Mobley, I will instruct—I will overrule the motion for mistrial and, ladies and gentlemen, you recall the evidence that you have heard in this case. I want you to draw whatever reasonable inference that you are able to draw from that evidence . . ."

Appellant's objection was, in effect, sustained and the jury was given a corrective instruction. Appellant did not renew his motion for mistrial. Nothing is presented for review. *Reese v. State,* 531 S.W.2d 638 (Tex.Cr.App.1976); *Nevarez v. State,* 503 S.W.2d 767 (Tex.Cr.App.1974).

On April 29, 1976, appellant and an assistant district attorney entered into a plea bargain agreement under which appellant would plead nolo contendere to the offense of injury to a child and a jury would be impaneled to assess punishment. On May 7, three days before trial was set to begin, the district attorney informed appellant's appointed defense counsel that he was withdrawing the plea bargain agreement. On May 10, appellant requested and received a continuance until July 5 in order to prepare for trial in light of the withdrawal of the agreement. Selection of the jury began on July 12.

On June 14, appellant filed a motion requesting that the trial court order the district attorney to honor the plea bargain agreement. Appellant contends that the trial court erred in overruling this motion.

Where a defendant enters a plea of guilty or nolo contendere pursuant to a plea bargain agreement, the State is bound to carry out its side of the bargain. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 20 L.Ed.2d 427 (1971); *Washington v. State,* 559 S.W.2d 825 (Tex.Cr. App.1977); *McFaddin v. State,* 544 S.W.2d 159 (Tex.Cr.App.1976); *Ex parte Jasper,* 538 S.W.2d 782 (Tex.Cr.App.1976). However, a defendant has no right to demand that the State enter into a plea bargain. *Morano v. State,* 570 S.W.2d 550 (Tex.Cr. App.1978). In the instant case, the agreement was withdrawn prior to the entry of appellant's plea. Appellant was in the same position he would have been in had no agreement been made, or had the trial court indicated that it would not follow the agreement and appellant withdrawn his plea. Art. 26.13, V.A.C.C.P.; *Gibson v. State,* 532 S.W.2d 69 (Tex.Cr.App.1975).

There can be little doubt that the withdrawal of the agreement by the district attorney could have prejudiced appellant had he been forced to trial without adequate time to prepare his defense. But the trial court gave appellant a two-month continuance after the agreement was withdrawn, and appellant did not request a further continuance. Appellant argues that he was prejudiced by having to enter a not guilty plea after newspaper stories had been published stating his willingness to plead guilty to injury to a child. Aside from the fact that appellant had only agreed to plead nolo contendere, he has failed to point out any instance in which he was forced to accept a juror who had heard of the plea bargain agreement. In the absence of any showing of harm, we hold that the prosecutor's withdrawal from the plea bargain agreement prior to the entry of a plea by appellant was not reversible error.

Finally, appellant contends that the trial court erred in allowing the State to be represented by two attorneys while he was afforded only one attorney. There is no rule of law limiting the number of attorneys who may appear for the State or which prevents a district attorney from conducting the prosecution of a case. *Mikchel v. State,* 298 S.W.2d 829 (Tex.Cr.App.1957).

The judgment is affirmed.

CLINTON, J., dissents from the disposition of the ground of error concerned with the plea bargain.