**Hulon Javance EASTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–87–0073–CR.**

Court of Appeals of Texas, Amarillo.

Nov. 10, 1987.

Roderique S. Hobson, Jr., Lubbock, for appellant.

Travis Ware, Dist. Atty., R. Deniece Jones, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Hulon Javance Easter brings this appeal from his conviction of the offense of burglary of a habitation and the consequent court-assessed punishment of seventy-five years confinement in the Department of Corrections. In attacking his conviction, appellant raises two points of error. He says the trial court erred in (1) empaneling a jury, since the prosecutor had used peremptory strikes in a racially discriminatory manner and the defense was not allowed to question the prosecution as to its reasons for striking certain minority jurors, and (2) refusing to consider a prior plea bargain offered by the district attorney's office and accepted by appellant. We affirm the judgment of the trial court.

In argument under his first point, appellant says that the prosecution used peremptory challenges to strike every Mexican–American on the jury panel. The record shows that he objected to this action on the grounds that it denied him an effective cross-representation of the community, therefore, denying him a trial before a jury of his peers. On that basis alone, he then moved for a hearing to explore the basis of the prosecution's strikes of the Mexican–Americans. This motion was overruled by the trial court, giving rise to this appeal.

In support of his proposition, appellant invokes the standard set out by the United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). In that connection, appellant does not challenge the make-up of the jury panel from which the trial jury was selected; rather, his challenge is specifically limited to the manner in which the prosecution used its peremptory strikes in the selection of the trial jury.

We must note that it is appellant's burden to submit a proper record to support his appellate contentions. Tex.R.App.P. 50(d). Other than the conclusion stated in appellant's objection and in his brief, there is nothing in the record, such as the State's strike list, to support his contention that the State actually did strike all Mexican–Americans on the jury list. It is well established that this Court cannot accept as fact allegations or assertions in an appellant's brief that are not supported by the record. *Beck v. State,* 573 S.W.2d 786, 788 (Tex. Crim.App.1978).

However, although appellant is black and the potential jurors assertedly struck are of another cognizable racial group, as noted above, it is his position that under the Court's standard explicated in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, this cause must be remanded for new trial. In the *Batson* case, the Court reiterated its prior observation that the State's purposeful or deliberate denial of jury participation to black persons simply because of their race violated the Equal Protection Clause of the United States Constitution. *Id.* 476 U.S. at 84, 106 S.Ct. at 1716, 90 L.Ed.2d at 79.

En route to its decision, the *Batson* Court reiterated the general proposition that "[a]s in any equal protection case, the 'burden is, of course' on the defendant who alleges discriminatory selection of the venire 'to prove the existence of purposeful discrimination.'" *Id.* 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85. It went on to recognize the previously established rule that a defendant *alleging that members of his race* have been impermissibly excluded may make out the requisite prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose and, such a showing may be made by consideration of the surrounding facts concerning the jury selection in his particular case (emphasis add-

ed). *Id.* at 94, 106 S.Ct. at 1721–22, 90 L.Ed.2d at 86–87. When a prima facie showing has been made by an appellant, the burden then shifts to the State to come forward with a neutral explanation for challenging such jurors. *Id.* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

It is in that event that the court is required to hold a hearing of the type sought by this appellant. Absent such a showing, the Court expressly recognized the "important position" the peremptory challenge occupies in our trial procedures and the continued viability of the use of such challenges absent a pattern of racial discrimination against a defendant's racial group. *Id.* at 98–99, 106 S.Ct. at 1724, 90 L.Ed.2d at 89.

The Court's specific holding, as explicated by our Court of Criminal Appeals in *Keeton v. State,* 724 S.W.2d 58 (Tex.Crim. App.1987), said that a defendant might satisfy the necessity for a prima facie showing of racial discrimination denying him equal protection by showing that:

    1. he was a member of a cognizable racial group;

    2. the prosecutor had exercised peremptory challenges to remove from the venire *members of the defendant's race* . . . and

    3. the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the venireman on account of their race (emphasis added).

*Id.* at 65.

It is also worthy of note that the *Batson* Court specifically reiterated that "we have never held that the Sixth Amendment requires that 'petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population' " because, it said, "it would be impossible to apply such a concept of proportional representation to the petit jury in view of the heterogeneous nature of our society." 476 U.S. at 85, n. 6, 106 S.Ct. at 1717 n. 6, 90 L.Ed.2d at 80, n. 6.

■ Since appellant has not met the requisite of showing that the assertedly excluded jurors were of his own race, the *Batson* doctrine does not aid him in making a prima facie showing of racial discrimination. Moreover, assuming, arguendo, that the State did strike all Mexican–American jurors on the jury list, there is nothing in the record sufficient to meet appellant's necessary burden of showing that such an exclusion of another and separately cognizable racial group was such purposeful discrimination on the part of the State as to deprive him of any Sixth Amendment right. Appellant's first point is overruled.

■ As shown above, in his second point, appellant says the court erred in refusing to consider a plea bargain previously offered by the District Attorney's office and accepted by the defendant. The record reveals that appellant initially entered a plea of not guilty to the charge against him. Later, after the completion of the State's evidence, appellant sought to withdraw his plea of not guilty and enter a plea of guilty with a request to the court to "follow the plea bargain in this case" which, he said, he had accepted. This request prompted a rejoinder from the State that "Brad Underwood (an assistant district attorney) offered [sic] 20 years TDC," provided that it was accepted "prior to indictment." Therefore, said the State's trial counsel, "since it was not pled prior to indictment, all offers are off." This rejoinder caused appellant's counsel to introduce a letter from one of appellant's earlier lawyers, David Schulman, to appellant, in which that lawyer stated his understanding, based upon a conversation between appellant and another lawyer practicing with Schulman that appellant wished to accept the tendered plea bargain. Counsel then inquired as to whether the court intended to follow the plea bargain. Upon being notified that the court would not do so, appellant withdrew his guilty plea and the case continued to its conclusion under a plea of not guilty. Later, during the punishment hearing, the court allowed appellant to produce Mr. Schulman's testimony for the purpose of a bill of exception. This testimony was to the general effect that Schulman felt he had arrived at a plea bargain with the State.

In support of his proposition that the trial court erred in not following the asserted plea bargain, appellant places primary reliance upon the decisions in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Ex parte Perkins*, 706 S.W.2d 320 (Tex.Crim.App.1986); and *DeRusse v. State*, 579 S.W.2d 224 (Tex.Crim. App.1979). That reliance is misplaced. *Santobello* and *Perkins* are distinguishable and *DeRusse* militates against appellant's position.

In *Santobello v. New York*, 404 U.S. at 257, 92 S.Ct. at 496, the trial court had accepted a guilty plea from a defendant induced to enter the plea by a representation that there would be no sentence recommendation by the prosecution; a representation which was not carried out. It was in that context that the case was remanded to the State trial court for determination as to whether the circumstances of the case dictated specific performance of the plea bargain or the opportunity to withdraw the plea of guilty. In the instant case, when the appellant was informed the trial court would not accept the asserted plea bargain, he was allowed to withdraw the attempted plea of guilty. Particularly in view of the fact that the trial had already proceeded through the completion of the State's evidence under a not guilty plea, the remedy was adequate. *Id.* at 263, 92 S.Ct. at 499.

In *Ex parte Perkins*, 706 S.W.2d at 320, the question was whether a plea bargain had been properly carried out subsequent to a guilty plea. That is a question different from that presented here.

In *DeRusse v. State*, 579 S.W.2d at 224, the district attorney notified appellant that he was withdrawing the plea bargain agreement three days before the trial date. As a result, appellant sought and received a continuance for the purpose of preparing a defense. Subsequent to the continuance, but prior to the trial date, DeRusse moved the court to require the district attorney to honor the plea bargain. That motion was overruled by the trial court giving rise to one of the points on appeal. The Court's discussion and disposition of that ground are highly relevant and analogous here.

The *DeRusse* Court pointed out that where a defendant actually entered into a plea of guilty or nolo contendere pursuant to a plea bargain agreement, the State is obligated to carry out such an agreement. However, it said, a defendant has no right to demand that the State enter into a plea bargain. *Id.* at 236. Moreover, the Court emphasized that the agreement was withdrawn prior to the entry of DeRusse's plea and, therefore, he was in the same position he would have been in had no agreement been made, or had the trial court indicated that it would not follow the agreement. Therefore, the Court concluded, appellant made no showing of harm that required reversal. *Id.* Appellant in this case is in a position so markedly similar to that of *DeRusse* as to require a similar disposition of his argument.

Moreover, Texas Code of Criminal Procedure Annotated article 26.13(a)(2) (Vernon Pamph.Supp.1987) specifically provides that any plea recommendation of the prosecuting attorney is not binding upon the court. While appellant would have us speculate upon the reasoning of the trial court in declining to accept the supposed plea bargain, we must refuse to do so. Suffice it to say that the court's refusal to do so was at a time when it was within his discretion to do so and this record shows no abuse of that discretion. Appellant's second point is overruled.

In summary, all of appellant's points are overruled and, there being no reversible error, the judgment of the trial court is affirmed.