Opinion issued March 16, 2006 







                                                                                                  



In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00032-CR




OMAR GUADALUPE RODRIGUEZ JR., Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 978114



MEMORANDUM OPINION

          A jury found appellant, Omar Guadalupe Rodriguez Jr., guilty of possession of
cocaine weighing at least 400 grams. See Tex. Health & Safety Code Ann. §
481.112 (Vernon 2003). The trial court assessed appellant’s punishment at 20 years
in prison. We address (1) whether the evidence was legally and factually sufficient
to prove that appellant knowingly exercised care, custody, control or management of
the cocaine and (2) whether appellant was denied due process, a fair trial, and effective
assistance of counsel because the State implied the existence of a factual predicate that
left a false impression that the prosecutor either knew or should have known was false. 
We affirm.Factual Background
          On February 19, 2004, a team of Houston Police Department narcotics officers,
including Officer Floyd Winkler, executed a search warrant at 3914 Ascot Lane (“the
Ascot property”). The front door of the house was open, and two men were there 
completing work on the house. One man was in the front of the Ascot property,
retrieving equipment from a work truck; he had been installing some wire or cable. 
The second man was in the bathroom “laying a new floor.” The police officers
detained and questioned these two men, then released them after having determined
that they did not reside there. Appellant was not present when the narcotics team
arrived, but drove up 30 minutes later. 
          The house on the Ascot property had two bedrooms and a large walk-in closet
that was wheelchair accessible.


 This master-bedroom closet contained men’s clothing
and shoes. The house had steel doors that were one-and-one-half inches thick. There
were videotape-surveillance cameras on the roof, allowing views of all four sides of
the exterior of the house. These images were displayed on a television monitor in the
master bedroom.
          The narcotics team found 20 grams of cocaine in the pocket of a vest hanging
in the master-bedroom closet, 10 grams of marijuana in the cabinet below the sink in
the master bathroom, 2.6 grams of cocaine on a six-foot high shelf in the second
bedroom’s closet, 105 grams of cocaine in the detached garage, and 477 grams of
cocaine and 3.5 pounds of marijuana in the trunk of a vehicle, registered in appellant’s
name, parked near the garage. Police officers also discovered digital scales, a money
counter, and marijuana wrapping papers and packing bags in appellant’s house and
vehicle. In addition to the drugs and drug paraphernalia, the narcotics team recovered
a loaded shotgun, a military assault rifle, five pistols, a police-style vest, two
expandable batons, a Federal Bureau of Investigation (“FBI”) patch, five pairs of
handcuffs, and two black ski masks.
          Officer Winkler also discovered appellant’s personal documents in the house. 
Officer Winkler found a credit application, in a desk in the living room, which had
appellant’s name and listed the Ascot property as his residence. The application listed
appellant’s mother’s address, 2307 Saxon (“the Saxon property”), as his previous
address. Appellant’s driver’s license was also found in the desk. 
          Appellant’s mother, Mary Ellen Rodriguez, and his daughter, Brenda Figuerora,
testified that appellant lived at the Saxon property. They also testified that, due to
physical restrictions, appellant required daily assistance caring for himself. 
Appellant’s mother testified that appellant purchased the Ascot property for $214,000 
as an investment property.


 She also testified that the vehicle, where 477 grams of
cocaine and 3.5 pounds of marijuana were discovered, belonged to her recently
deceased husband, who had the same name as appellant. 
          Sufficiency of the Evidence
          In his first and second points of error appellant argues that the evidence is
legally and factually insufficient to prove that he knowingly exercised care, custody,
control, or management of the cocaine. 
A.      The Law
          Intentionally or knowingly possessing a controlled substance is an offense under
the Texas Controlled Substance Act. See Tex. Health & Safety Code Ann. §
481.115(a) (Vernon 2003). To prove the offense of possession of a controlled
substance, the State must show that the accused (1) exercised actual care, custody,
control, or management of the controlled substance and (2) was conscious of his
connection with the controlled substance and knew what it was. See id. §§
481.002(38), 481.112(a) (Vernon 2003); Salazar v. State, 95 S.W.3d 501, 504 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d). These elements may be established by
either direct or circumstantial evidence. Brown v. State, 911 S.W.2d 744, 747 (Tex.
Crim. App. 1995).
          When the accused is not in exclusive possession of the place where the
contraband is found, we cannot conclude that the accused had knowledge of and
control over the contraband unless the State establishes an affirmative link between
the accused and the contraband—i.e. independent facts and circumstances that
affirmatively link the accused to the contraband so as to suggest that the accused had
knowledge of the contraband and exercised control over it. Rhyne v. State, 620
S.W.2d 599, 601 (Tex. Crim. App. 1981); Roberson v. State, 80 S.W.3d 730, 735
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). In other words, the State must
establish that the accused’s connection with the substance was more than just
fortuitous. Brown, 911 S.W.2d at 747.
          The Court of Criminal Appeals has identified several non-exclusive factors that
may help to establish an affirmative link between the accused and the contraband,
including whether (1) the contraband was in plain view; (2) the contraband was
conveniently accessible to the accused; (3) the accused was the owner of the place
where the contraband was found; (4) the accused was the driver of the automobile in
which the contraband was found; (5) the contraband was found on the side of the car
where the accused was sitting; (6) the place where the contraband was found was
enclosed; (7) the odor of the drug found was present in the vehicle; (8) paraphernalia
for use of the contraband was in view of or found on the accused; (9) conduct by the
accused indicated a consciousness of guilt; (10) the accused had a special connection
to the contraband; (11) occupants of the vehicle gave conflicting statements about
relevant matters; (12) the physical condition of the accused indicated recent
consumption of the contraband found in the vehicle; and (13) affirmative statements
by the accused connected the accused to the contraband.


 Courts have also considered
(1) traces of the contraband found on the accused, (2) a large sum of money found on
the accused, and (3) the amount of contraband found. Poindexter v. State, 153
S.W.3d 402, 412 (Tex. Crim. App. 2005; Whitworth v. State, 808 S.W.2d 566, 569
(Tex. App.—Austin 1991, pet. ref’d); Roberson, 80 S.W.3d at 742. Although several
factors relevant to establishing an affirmative link may have been identified, the
number of factors actually supported by the evidence is not as important as the logical
force that they collectively create to prove that a crime has been committed. 
Roberson, 80 S.W.3d at 735 (quoting Whitworth, 808 S.W.2d at 569)).
B.      Legal Sufficiency
            In his first point of error, appellant argues that the evidence was legally
insufficient to prove that he knowingly exercised care, custody, control, or
management of the cocaine. 
            In conducting a legal-sufficiency review, we view all of the evidence in the light
most favorable to the verdict and then determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Escamilla
v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). In conducting our review of
the legal sufficiency of the evidence, we do not re-evaluate the weight and credibility
of the evidence, but ensure only that the jury reached a rational decision. Muniz v.
State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). Under a legal- or
factual-sufficiency review, the jury is the exclusive judge of the facts, the credibility
of the witnesses, and the weight to be given to their testimony. McKinny v. State, 76
S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The jury may
believe or disbelieve any part of a witness’s testimony. See id. at 469.
            Appellant argues that the evidence is legally insufficient to support his
conviction because the only arguable link between him and the drugs in this case was
a six-month-old credit application. Appellant also emphasizes the extent to which the
typical affirmative links are missing in this case. However, we need not consider
affirmative link factors that are absent from the evidence. See Hurtado v. State, 881
S.W.2d 738, 745 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). The only test that
we must apply is whether, after viewing all of the evidence in the light most favorable
to the verdict, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. See id.
            Viewed in the light most favorable to the verdict, the evidence shows that
appellant owned and resided at the Ascot property, where the cocaine was stored and
found. See Villegas v. State, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.]
1994, pet. ref’d) (finding that significant affirmative link exists when accused owns
or otherwise controls place where police find drugs). Appellant was also the
registered owner of the vehicle parked near the garage of the house on the Ascot
property, and 477 grams of cocaine were found locked in the vehicle’s trunk. 
Appellant arrived at the Ascot property while the police officers were executing the
search warrant. More than 600 grams of cocaine, worth approximately $10,000, were
found in appellant’s home, vehicle, and garage. See Hurtado, 881 S.W.2d at 743
(finding that large, extremely valuable quantity of cocaine (near-kilogram brick) is
amount not likely be misplaced or forgotten by owner or person entrusted with its
possession). In addition to cocaine, police officers also recovered three-and-one-half
pounds of marijuana, digital scales, a money counter, and marijuana wrapping papers
and packing bags in appellant’s house and vehicle. Appellant’s house was heavily
fortified with heavy steel doors, and the property had a sophisticated video-surveillance security system, which is consistent with a drug dealer’s house. In
addition to the drugs and drug paraphernalia that they found, police officers recovered
a loaded shotgun, a military assault rifle, and five pistols from appellant’s residence. 
Police officers also found a police-style vest, two expandable batons, an FBI patch,
five pair of handcuffs, and two black ski masks.
          From this evidence, a rational jury could have found that the evidence
established an affirmative link between the appellant and the cocaine. See Roberson,
80 S.W.3d at 735. Accordingly, we hold that the evidence was legally sufficient to
show that support appellant exercised actual care, custody, control, or management of
the cocaine. See Robinson v. State, 174 S.W.3d 320, 329-30 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d). 
            We overrule appellant’s first point of error.
 
 
C.      Factual Sufficiency
            In his second point of error, appellant argues that the evidence was factually
insufficient to prove that he knowingly exercised care, custody, control, or
management of the cocaine. 
            When determining the factual sufficiency of the evidence, we review all of the
evidence neutrally. Escamilla, 143 S.W.3d at 817. Proof of guilt is factually
insufficient if it is so obviously weak as to indicate that a manifest injustice has
occurred or if it is greatly outweighed by contrary proof. Id.; Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004). In our review, we must consider the most
important evidence that the appellant claims undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
            In support of his factual-sufficiency challenge, appellant relies on the same
evidence and arguments that he raised in his legal-sufficiency challenge, pointing to
evidence weighing against the jury’s verdict, as well as evidence and reasons that he
claims make the State’s evidence so obviously weak as to undermine confidence in the
verdict. 
            Appellant contends that he did not live at the house where the cocaine was
found, but, rather, that he lived at the Saxon property with his mother. Appellant
owned a business that renovated older houses. He contends that he hired workers to
complete the renovations and that the workers lived at the property. Appellant’s
mother and daughter testified that appellant lived at the Saxon property. Appellant’s
driver’s license, which was found at the Ascot property, listed the Saxon property as
his address. Appellant’s mother explained that appellant was quadriplegic, paralyzed
from the chest down, and that he could not care for himself. Appellant needed
assistance dressing himself, brushing his teeth, and getting out of bed. Appellant
contends that because the house was not built to accommodate his handicap, and
because he did not have personal effects such as photographs, medication, medical
equipment, and toiletries there, there was evidence that he did not live at the Ascot
property. 
          However, appellant’s mother admitted that he owned the Ascot property for
investment purposes. In addition, the Ascot property’s master bedroom was furnished
with a bed and entertainment center, and the master closet, which was wheelchair-
accessible, contained a lot of men’s clothing and shoes. The police officers also found
appellant’s personal documents in the Ascot property, including a loan application and
driver’s license, as well as other personal possessions, such as guns, scales and a
money counter. Furthermore, the loan application listed the Saxon address as
appellant’s previous address and the Ascot property as his current address. Under a
factual-sufficiency review, the jury is the exclusive judge of the facts, the credibility
of the witnesses, and the weight to be given to their testimony. McKinny, 76 S.W.3d
at 468-69. The jury may simply have disbelieved appellant’s mother’s and daughter’s
testimony. See id. at 469. 
          Appellant contends that he introduced evidence that he was not the owner of the
vehicle on the Ascot property. The State introduced evidence that the car was
registered to Omar Rodriguez. Appellant’s mother stated that her husband, who was
also named Omar Rodriguez, like appellant, was the owner of the vehicle where the
drugs were found. Under a factual-sufficiency review, the jury is the exclusive judge
of the facts, the credibility of the witnesses, and the weight to be given to their
testimony. See id. at 468-69. The jury may simply have disbelieved appellant’s
mother’s testimony. See id. at 469. 
            Appellant contends that two other men, who were at the Ascot property when
the search began, may have been responsible for the cocaine. Appellant arrived at the
Ascot property while the search was being conducted; however, the two workers were
present when the police officers arrived to execute the search warrant. Officer
Winkler explained that one of the workers was in the front, wiring either the security
system or cable, and that the second worker was in the bathroom, doing flooring work. 
Appellant argues that the worker in the master bathroom had more obvious links to the
marijuana found in a bathroom cabinet and the cocaine found in the master bedroom
closet because of his proximity to the drugs. The police officers questioned the two
workers and verified that they did not have outstanding warrants and did not live at
the Ascot property. The mere possibility that the two men could have been connected
to the cocaine does not render the evidence factually insufficient. The affirmative link
between appellant and the cocaine need not be so strong that it excludes every other
outstanding reasonable hypothesis except appellant’s guilt. See Brown, 911 S.W.2d
at 748. Given the evidence, the jury simply may not have believed appellant’s
alternative theory that the two workers at the Ascot property were responsible for the
cocaine. See McKinny, 76 S.W.3d at 468-69.
          In support of his argument that he did not have knowledge of the cocaine,
appellant argues the fact that he did not flee, when provided with an easy opportunity
to do so, demonstrated his lack of awareness that there was anything from which to
flee. Appellant contends that if he had been aware of the large amount of drugs, he
and the driver would not have stopped at the Ascot house, with its obvious police
presence, but, rather, could have continued to drive past it. Even if appellant had fled,
officers would have connected him to the cocaine because appellant was the owner of
the Ascot property and vehicle where the drugs were found. In this case, appellant’s
decision to stop does not necessarily tend to prove his innocence. See Bird v. State,
692 S.W.2d 65, 73 (Tex. Crim. App. 1985) (finding that failure to flee does not
necessarily tend to prove innocence). Considering the evidence, the jury could have
found that appellant had knowledge of the cocaine, even though he stopped at the
property while the police were executing the search warrant.    
          Appellant also argues that he did not possess the cocaine because he lacked
access to it due to his paralysis. Specifically, appellant contends that he was unable
to reach the cocaine, which was located on the six-foot shelf in the master bedroom,
in the locked trunk of the car, in the rear of the garage, and under the bathroom sink. 
Appellant claims that he had no access to the drugs in the trunk of the vehicle because
he had no key, and, even if he had a key, he could not have opened the trunk because
he had very limited use of his hands. The evidence showed that appellant relied on
others to aid him in caring for himself and to renovate houses for his business. Officer
Winkler testified that drug dealers typically have people who handle the drugs
working for them. However, appellant need not have exercised exclusive control over
the cocaine; he may have jointly possessed it with another. See McGoldrick v. State,
682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Considering the evidence, the jury
could have found that appellant possessed the cocaine, even though he had limited
access to it because of his paralysis. See id.         
          Appellant argues that the lack of fingerprint evidence diminished his connection
with the cocaine. Although the contraband seized at the Ascot property was submitted
to the Houston Police Department Crime Lab for fingerprint examination, no suitable
fingerprints came back. Officer Winkler explained that it is uncommon to recover
fingerprints in cases such as this one because, when a high volume of narcotics is
delivered, more than one person tends to handle the drugs. It is the sole province of
the jurors to draw reasonable inferences based on the evidence before them. McKinny,
76 S.W.3d at 468-69. Considering all of the evidence, the jury could have found that
appellant possessed the cocaine, even though no fingerprint evidence was introduced. 
See id.       
          The evidence linking appellant to the cocaine is circumstantial. However, in
circumstantial-evidence cases, it is not necessary that every fact and circumstance
point directly and independently to the guilt of the accused. See Russell v. State, 665
S.W.2d 771, 776 (Tex. Crim. App. 1983). It is enough if the conclusion is warranted
by the combined and cumulative force of all of the incriminating circumstances. Id.
Every case must be reviewed on its own facts and circumstances to determine the
sufficiency of the evidence. Id. at 775. 
          After viewing all of the evidence neutrally, we hold that the evidence supporting
the verdict is not too weak to support the finding of guilt beyond a reasonable doubt
and that the contrary evidence is not so strong that the beyond-a-reasonable-doubt
standard could not have been met. See Escamilla, 143 S.W.3d at 817. Accordingly,
we hold that the evidence is factually sufficient to prove that appellant knowingly
exercised care, custody, control, or management of the cocaine. See id.
          We overrule appellant’s second point of error.
Improper Questions and Jury Argument
          In his third point of error, appellant argues that he was denied due process, a fair
trial, and the effective assistance of his counsel when the prosecutor asked questions
of two defense witnesses that implied the existence of a factual predicate that the
prosecutor either knew or should have known was false. Appellant further contends
that the State left a false impression with the jury during closing argument because the
prosecutor stated that appellant had purchased his mother’s home.
          To preserve error for appellate review, the complaining party must make a
timely, specific objection. Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998).
The objection must be made at the earliest possible opportunity. Dixon, 2 S.W.3d at
265; see Marini v. State, 593 S.W.2d 709, 716 (Tex. Crim. App. 1980). The
complaining party must obtain an adverse ruling from the trial court. Dixon, 2 S.W.3d
at 265; DeRusse v. State, 579 S.W.2d 224, 235 (Tex. Crim. App. 1979). To obtain an
adverse ruling, if the objection is sustained, counsel must then ask for an instruction
to disregard. If the instruction is given, counsel must then move for a mistrial. 
Nethery v. State, 692 S.W.2d 686, 701 (Tex. Crim. App.1985); Coe v. State, 683
S.W.2d 431, 436 (Tex. Crim. App. 1984). If counsel does not pursue the objection to
an adverse ruling, error is not preserved. Tex. R. App. P. 33.1; Ramirez v. State, 815
S.W.2d 636, 643 (Tex. Crim. App. 1991). 
A.      Defense Witness Questions
          Appellant argues that “[d]uring the prosecutor’s cross-examination of both
Appellant’s daughter and mother, the prosecutor asked various questions that were
obviously intended to portray the Appellant as someone who had substantial assets
without any record of having worked.” On appeal, appellant asserts that the State
asked bad-faith questions, which resulted in prosecutorial misconduct. 
          Appellant contends that the following question by the State to his daughter was
improper: 
[STATE]: Well, would it surprise you to know Ms.
Figuerora on the articles of the organization which is the,
like the place where you send your corporation to in the
State of Texas you know that you let them know that you’ve
got a corporation?
 
[APPELLANT’S DAUGHTER]: Uh-huh.
 
[STATE]: Would it surprise you to know that his name is
not mentioned on any of the corporation papers?
 
[APPELLANT]: Judge, I object to facts not in evidence.
 
THE COURT: Sustained.

 
Appellant argues that the implication from the State’s questions was that appellant had
no legitimate source of income and was able to afford the things that he purchased
because of drug dealing.
          Appellant also contends that the following questions by the State to appellant’s
mother were improper: 
[STATE]: And so Omar Rodriguez he didn’t also purchase
the house that you live in?
 
[APPELLANT’S MOTHER]: My husband?
 
[STATE]: No. Omar Jr.
 
[APPELLANT’S MOTHER]: No. It’s in my name but it’s
his house too. I consider it his home too.
 
[STATE]: So it would surprise you to know that it was
actually in his name also, your son Mr. Rodriguez?
 
[APPELLANT’S MOTHER]: Yeah.
 
                    . . .
 
                    [STATE]: Okay. So you do know that he makes money?
 
[APPELLANT’S MOTHER]: That he . . . I think they re-invest and you know they buy a house and sell it and re-invest in another one. I don’t think they make that much. 
They re-invest.
 
[STATE]: But enough to buy the house you live in, right?
 
[APPELLANT’S MOTHER]: Well, no not the one I live in
because we share expenses.
 
                    [STATE]: But it would surprise you that his name is
actually the owner of the residence that you live in?
 
[APPELLANT’S MOTHER]: I don’t understand.
 
[STATE]: Okay. Would it surprise you to know that he
actually owns the residence that you live in?
 
[APPELLANT’S MOTHER]: No, cause as far as I’m
concerned he owns it.

Appellant argues that the State’s questions clearly suggested that it had independent
knowledge that appellant had purchased his mother’s house. 
          Appellant relies on Duggan v. State to assert that the error here is constitutional
error and is subject to the harm analysis found in the predecessor of Rule of Appellate
Procedure 44.2 (a). See Duggan v. State, 778 S.W.2d 465, 468 (Tex. Crim. App.
1989) (holding that prosecutor has constitutional duty to correct known false evidence
under both law and professional regulations that govern prosecutorial conduct). In
Duggan, two accomplices testified that they did not have any kind of arrangement to
receive leniency from the State in exchange for their testimony. Id. The prosecutor
confirmed the existence of an understanding between the accomplices and that the
State would consider leniency in exchange for their testimony. Id. Thus, in Duggan,
the jury had a false impression of the true nature of the relationship between the
accomplices and the prosecution because of false evidence. By contrast, here,
counsel’s questions are not evidence.
          Appellant’s only objection to the State’s questioning of his daughter was
sustained, and appellant requested no further relief from the trial court. No complaint
is presented for our review, therefore, with respect to that objection. See Tex. R. App.
P. 33.1(a); see Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999); Dixon,
2 S.W.3d at 265 (holding that preservation of error requires adverse ruling from trial
court). 
          In addition, because appellant did not object during trial to the questions the
State asked of his mother, he failed to preserve that issue for appeal. See Tex. R. App.
P. 33.1(a)(1). Appellant’s failure to raise his appellate arguments at trial deprived the
trial court of the opportunity to rule upon the argument and deprived the State of an
opportunity to develop a complete factual record. See Hailey v. State, 87 S.W.3d 118,
122 (Tex. Crim. App. 2002). We hold that appellant failed to preserve these issues for
appeal. See id. 
B.      Improper Jury Argument
          Appellant contends that the following jury argument by the State was improper:
 [STATE]: It comes back to this man, the man that’s kept his
family, been able to financially hold up his family over the
last couple of years, purchasing his mom’s home— 
 
[APPELLANT]: Objection, Your Honor there’s zero
evidence that he purchased his mom’s home and I object
that’s not in the record. [The prosecutor] did not introduce 
 
that. That was her mere words and that’s a misstatement of
the evidence.
 
THE COURT: Sustained.
 
[APPELLANT]: And I’d ask the jury to disregard that
misstatement of the evidence.
 
THE COURT: Disregard.
          The record reflects appellant received all of the relief that he requested
regarding the State’s jury argument. Here, appellant objected to the jury argument, but
did not pursue it to an adverse ruling. Appellant objected to the State’s comment, the
objection was sustained, and the trial court instructed the jury to disregard. No request
for mistrial was made. Thus, no complaint was pursued to an adverse ruling. Without
an adverse ruling, there is no error preserved for our review. See Tex. R. App. P.
33.1(a); Ramirez, 815 S.W.2d at 643. Therefore, we hold that appellant’s failure to
pursue to an adverse ruling on his objection to this jury argument forfeits his right to
complain about the argument on appeal. See id. 
          Finally, regarding his ineffective-assistance-of-counsel challenge, appellant fails
to cite authority and posit arguments to establish the Strickland elements of ineffective
assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.
2052, 2064 (1984). We will not address this argument because appellant has failed 
 
to brief it adequately. See Tex. R. App. P. 38.1(h); Cardenas v. State, 30 S.W.3d 384,
393 (Tex. Crim. App. 2000).  
          We overrule appellant’s third point of error.
                                                                          Conclusion
          We affirm the judgment of the trial court.
                                                                                                                                     
                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Do not publish. See Tex. R. App. P. 47.2(b).