NO. 07-03-0255-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MAY 28, 2004



______________________________




TEDDY W. CARTER, II, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-400267; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION


 Following a plea of not guilty, appellant Teddy W. Carter, II was convicted by a jury
of aggravated sexual assault and punishment was assessed at 52.5 years confinement. 
In presenting this appeal, counsel has filed an Anders (2) brief in support of a motion to
withdraw. We affirm and grant counsel's motion to withdraw.

 In support of his motion to withdraw, counsel has certified that he has diligently
reviewed the record and, in his opinion, the record reflects no reversible error or grounds
upon which an appeal can be predicated. Anders v. California, 386 U.S. 738, 744-45, 87
S.Ct. 1396, 18 L.Ed.2d 493 (1967). Thus, he concludes the appeal is frivolous and without
merit. In compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Cr.App. 1978), counsel
has discussed why, under the controlling authorities, there is no error in the court's
judgment. Counsel has also shown that he sent a copy of the brief to appellant, and
informed appellant that, in counsel's view, the appeal is without merit. In addition, counsel
has demonstrated that he notified appellant of his right to review the record and file a pro
se brief if he desired to do so. Appellant did file a pro se response; however, the State did
not favor us with a brief. 

 Appellant was charged with two counts of sexually assaulting his eight-year-old
daughter. The State elected to proceed on only count one of the indictment which allegedly
occurred on March 12, 2002. At the time of the incident, the victim (A.C.), her mother, and
appellant, who is her biological father, were sleeping on the living room floor. A.C.'s mother
was recovering from recent oral surgery and had taken pain medication during the night. 
According to A.C.'s testimony, she awakened when appellant grabbed her arms, picked her
up, and re-positioned her on her side with her back against his front. Appellant turned A.C.
face up and rubbed her front "private part" over her clothing. He then pushed the leg
opening of her underwear to the side and penetrated her vagina with his finger. 

 The following morning while appellant was getting ready for work, A.C. told her
mother of the incident, who confronted appellant a few days later while A.C. and her
siblings were not home. A police report was filed shortly thereafter and A.C. was examined
by a sexual assault nurse who testified that the evidence showed A.C. had experienced
some type of digital penetration. A.C. also spoke with a forensic interviewer at the
Children's Advocacy Center about the incident.

 Appellant voluntarily gave a statement in which he denied the incident but admitted
he had an alcohol problem and had "no conscious knowledge of doing this." Several days
after the alleged assault, he apologized to A.C. at her grandparents' home and told her he
never meant to hurt her and would never intentionally hurt her. 

 By the Anders brief, counsel advances six arguable grounds, to-wit: (1) the trial court
erred in overruling appellant's objections to the admission of evidence of a prior act
committed by him against the victim; (2) the trial court failed to grant appellant's motion for
mistrial after it was discussed with Juror Belinda Bridges that she and witness Patricia
Salazar, a sexual assault nurse, worked in the same department of the Health Science
Center; (3) the trial court erred in denying appellant's objections to the jury verdict of 52.5
years by reaching its decision by lot or compromise; (4) the evidence was legally
insufficient; (5) the evidence was factually insufficient; and (6) trial counsel failed to provide
effective assistance of counsel.

 By a two-count indictment, appellant was charged with aggravated sexual assaults
that occurred on or about March 11, 2002, and February 11, 2002. Prior to voir dire, the
State explained to the court that it was proceeding on count one of the indictment (March
11 incident) and reserving count two for a later prosecution. Defense counsel requested
that the State not be permitted to mention count two to which the State responded it would
only be offered as an extraneous offense. The trial court announced, "We'll take that up
as it comes up." The court also advised defense counsel to make a proper objection at the
proper time regarding the extraneous offense. 

 Just prior to A.C. taking the stand, the State attempted but failed to obtain a
favorable ruling on admission of the extraneous offense during the guilt/innocence phase. 
The following morning, the State revisited the issue of admitting the extraneous offense
through A.C.'s testimony. Defense counsel renewed his objection that the extraneous
matter be admissible only during the punishment phase. The objection was overruled.

 During the guilt/innocence phase, without any objections from defense counsel,
evidence of the extraneous offense was introduced on at least three occasions. A.C.
testified that the first time an assault occurred she had a headache and appellant was
supposed to rub her head and instead put his hand on her "front private" and began
rubbing. A.C.'s mother testified that when A.C. told her about the March incident she also
told her about a prior incident that allegedly occurred approximately one month earlier. 
Finally, the sexual assault nurse who examined A.C. testified that A.C. told her appellant
had assaulted her twice.

 When the State attempts to adduce evidence of extraneous offenses, the defendant
must make a timely objection to preserve error for appellate review. Tex. R. App. P.
33.1(a)(1); see also Montgomery v. State, 810 S.W.2d 372, 387 (Tex.Cr.App. 1990) (on
reh'g). As counsel concedes in the Anders brief, he cannot in good faith advance an
argument that the admission of the extraneous offense was erroneous.

 Counsel's second arguable point addresses the trial court's failure to grant a mistrial
after it was discovered that juror Bridges and a witness both worked at the Health Science
Center. Counsel further advances argument regarding the trial court's failure to grant a
mistrial when the State asked the person who interviewed A.C. at the Children's Advocacy
Center whether A.C.'s statements were true and reliable. 

 During the trial, the State discovered that juror Bridges worked in the same
department as the sexual assault nurse that was scheduled to testify. Out of an abundance
of caution, Bridges was questioned on voir dire and explained that she did not work in the
same building as the nurse and had no prior knowledge of the case. She also testified she
could be fair and impartial and would not have any bias for or against the nurse's testimony. 
Defense counsel's request for mistrial was denied. 

 The denial of a motion for mistrial is reviewed for abuse of discretion. Simpson v.
State, 119 S.W.3d 262, 272 (Tex.Cr.App. 2003). In denying the motion, the trial court
announced that both sides had ample opportunity to question Bridges about her occupation
during voir dire. The trial court concluded that because Bridges testified she had no prior
knowledge of the case and could be fair and impartial, it was not a problem for her to serve
as a juror. Thus, the court did not abuse its discretion in denying appellant's motion.

 Counsel also argues that the State's question asking for an opinion from the
interviewer at the Children's Advocacy Center regarding the truth and reliability of A.C.'s
statements was improper. Two of defense counsel's objections to the State's questions
were sustained. However, counsel did not request any other relief. The proper sequence
for preserving error in the admission of improperly offered evidence is to (1) timely object;
(2) obtain a ruling; (3) move for an instruction to disregard; and (4) move for mistrial. De
Russe v. State, 579 S.W.2d 224, 236 (Tex.Cr.App. 1979). Defense counsel did not
preserve this complaint for review and because all the relief requested was granted, no
complaint may be entertained on appeal regarding the testimony of the interviewer
regarding the truth and reliability of A.C.'s statements. McCoy v. State, 10 S.W.3d 50, 55
(Tex.App.-Amarillo 1999, no pet.).

 Another arguable ground advanced by counsel is the trial court's denial of
appellant's request for a mistrial following the jury's punishment verdict of 52.5 years
confinement. Defense counsel argued the verdict was reached by lot. Any allegation of
jury misconduct must be raised by motion for new trial and supported by a juror's affidavit. 
Dugard v. State, 688 S.W.2d 524, 529 (Tex.Cr.App. 1985), overruled on other grounds, 780
S.W.2d 802 (Tex.Cr.App. 1989); see also Tex. R. App. P. 21.3. Although appellant raised
jury misconduct in the jury's verdict of 52.5 years confinement by motion for new trial, the
motion was unaccompanied by an affidavit. Thus, no error is presented in the trial court's
denial of a motion for new trial.

 Counsel also evaluates the legal and factual sufficiency of the evidence in
determining that no good faith argument can be advanced. A person commits aggravated
sexual assault if he intentionally or knowingly causes the penetration of the sexual organ
of a child younger than 14 years of age by any means. Tex. Pen. Code Ann. §
22.021(a)(1)(B) & (a)(2)(B) (Vernon Supp. 2004). Moreover, the testimony of a child sexual
assault victim alone is sufficient to support a conviction for aggravated sexual assault. Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon Pamph. Supp. 2004); Perez v. State, 113 S.W.3d
819, 838 (Tex.App.-Austin 2003, pet. ref'd). The jury is the exclusive judge of the facts and
the weight to be given their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon
Pamph. Supp. 2004). A.C. testified in detail that appellant rubbed her "front private part"
over her clothing and then pushed the leg opening of her underwear aside and penetrated
her vagina with his finger. A.C.'s mother testified as an outcry witness that A.C. described
the incident to her the following morning. See Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon Pamph. Supp. 2004). The medical evidence also supported A.C.'s claim of digital
penetration. Thus, reviewing the evidence under Jackson v. Virginia, 443 U.S. 307, 319,
99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), and Johnson v. State, 23 S.W.3d 1, 9
(Tex.Cr.App. 2000), we agree with counsel that sufficient evidence was presented to
support appellant's conviction.

 Finally, counsel evaluates numerous instances of ineffective assistance of trial
counsel both in acts of commission and omission. He concludes, however, that claims of
ineffective assistance of counsel will most likely be fruitless under the standard of review
required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984), and Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App. 2002). Counsel further
adds that as the Court noted in Mitchell, rarely will the record on direct appeal be sufficient
to show that counsel's conduct was so deficient as to meet the first prong of Strickland as
the "reasonableness of counsel's choices often involves facts that do not appear in the
record." 68 S.W.3d at 642. An application for a post-conviction writ of habeas corpus is
the appropriate manner in which to raise and develop claims based on ineffective
assistance of counsel. Id. 

 By his pro se response, appellant asserts eight errors in the trial court, to-wit: (1)
error in the admission of his statement; (2) error in the admission of an extraneous offense;
(3) the prosecution withheld testimony that would have established his innocence; (4) the
evidence is legally and factually insufficient; (5) improper and prejudicial opinion testimony
from a State's witness on the truth and reliability of A.C.'s statements; (6) prosecutorial
misconduct in "name calling" and inflammatory remarks; (7) denial of the right of allocution
prior to the imposition of sentence; and (8) ineffective assistance of counsel. Contentions
two, four, five, and eight were reviewed under counsel's arguable grounds and we need not
address them again. 

 By his first contention, appellant alleges error in the admission of his voluntary
statement. We disagree. Within two weeks of A.C. being assaulted, appellant voluntarily
went to the police department to give a statement. The detective who interviewed him
testified that although appellant was not in custody he was read his rights prior to giving his
statement. In addition to admitting he had an alcohol problem, appellant stated:

 There will not be another time that my daughter comes in and sleeps with us. 
I don't even know that I did this. I am not saying that my daughter is lying,
but I have no conscious knowledge of doing this.


During the detective's testimony, the State offered appellant's statement into evidence to
which defense counsel replied, "[n]o objection."

 To preserve error for appellate review in the admission of a defendant's statement,
a timely objection is required. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1). Defense
counsel affirmatively stated he had no objection to the admission of appellant's statement. 
Thus, the contention is not preserved for review.

 Appellant next contends the prosecution withheld testimony that would have
established his innocence. He argues that A.C. told witnesses for the State that appellant
was asleep at the time he allegedly assaulted her and that only on cross-examination was
she questioned on the matter. 

 Under article 2.01 of the Texas Code of Criminal Procedure, a district attorney shall
not suppress facts or secrete witnesses capable of establishing the innocence of the
accused. However, it is defense counsel's duty and not the prosecutor's to ask questions
calculated to elicit the desired information. Cf. Armstrong v. State, 897 S.W.2d 361
(Tex.Cr.App. 1995) (finding no juror misconduct because defense counsel did not ask the
questions necessary to bring out the desired information). Moreover, during A.C.'s cross-examination defense counsel asked several times whether appellant was asleep. Three
times she answered that she did not know and in response to the following, "Are you pretty
sure he was asleep when this happened, though," she replied, "I think so." The record
does not establish that the State acted improperly in its examination of A.C. Appellant's
contention is without merit.

 By his sixth contention appellant asserts prosecutorial misconduct in "name calling"
and inflammatory remarks, and by his seventh complaint contends he was denied the right
of allocution prior to the imposition of sentence. We disagree with both contentions. 
Appellant complains of the prosecutor's final remarks during jury argument when she
stated, "we will not tolerate child molesters." No objection was made to the comment. To
preserve error in improper jury argument, a defendant must object, request an instruction
to disregard, and move for mistrial. Cockrell v. State 933 S.W.2d 73, 89 (Tex.Cr.App.
1996); Cook v. State, 858 S.W.2d 467, 473 (Tex.Cr.App. 1993). Error, if any, was not
preserved for review. 

 Article 42.07 of the Texas Code of Criminal Procedure provides that before
pronouncing sentence, the defendant shall be asked whether he has anything to say why 
sentence should not be pronounced. Appellant contends he was denied this right. The
record, however, demonstrates that after announcing the sentence, the court asked, "[i]s
there any reason why sentence should not be pronounced today other than what you've
suggested already"? Defense counsel answered, "[n]o, sir." This contention is also
meritless.

 By the Anders brief, counsel raised numerous claims of ineffective assistance of trial
counsel and relying on recent decisions from the Court of Criminal Appeals conceded that
the claims are difficult to review on direct appeal. Appellant raises 18 claims of ineffective
assistance in his pro se response, some of which overlap with counsel's. As stated
previously, the appropriate vehicle for developing a record to support ineffective assistance
claims is by filing a post-conviction writ of habeas corpus. See Tex. Code Crim. Proc. Ann.
art. 11.07 (Vernon Supp. 2004). However, there is no right to counsel to mount a collateral
attack on a conviction. Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95
L.Ed.2d 539 (1987); Ex parte Graves, 70 S.W.3d 103, 111 (Tex.Cr.App. 2002).

 We have also made an independent examination of the entire record to determine
whether there are any other arguable grounds which might support this appeal. See
Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). We have found no
non-frivolous issues and agree with counsel that the appeal is without merit. Currie v.
State, 516 S.W.2d 684 (Tex.Cr.App. 1974); Lacy v. State, 477 S.W.2d 577, 578
(Tex.Cr.App. 1972).

 Accordingly, counsel's motion to withdraw is hereby granted and the judgment of the
trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish. 

 





1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).



style='text-align:center'>____________________________

 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

            Appellant,
Jammie Lee Moore, was convicted of possession of a
controlled substance, methamphetamine, in an amount of more than 4 grams but
less than 200 grams.[1]  The jury found that the possession occurred
within a drug free zone.[2]  After finding the enhancement allegations
contained within the indictment true, the jury assessed appellants punishment
at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for
30 years.  Appellant appeals contending
that the evidence is legally and factually insufficient to support the
conviction.  We affirm.

Factual Background

            On
April 6, 2007, appellant and his girlfriend, Maria Antionette
Garcia (Garcia), went to spend the evening and night at a motel in
Amarillo.  After arriving at the motel, at
the suggestion of appellant, they went to a bar in Amarillo known as No Dogs
Allowed.  They went to the bar,
according to Garcia, so that appellant could meet someone.  Upon arriving at the bar, the person
appellant was to meet was not present. 
Drinks were ordered and appellant walked away from the bar to talk on
his cell phone.  When the drinks were
served, Garcia tipped the bartender a dollar from the change.  This made appellant angry and words were
exchanged with Garcia.  Garcia got up and
went outside the bar.  Upon exiting the
bar, appellant pushed Garcia down to the ground.  Appellant then continued to yell at
Garcia.  

            After leaving the bar, appellant and Garcia went back to the motel,
where appellant continued to yell at her.  Appellant was again unable to contact the
person he was to meet and, in a fit of anger, kicked a table that struck
Garcia.  Following this, the two packed
their belongings and went back to the house at 938 Dahlia Street in Amarillo.  Once they returned to the house, appellant
dropped Garcia off and left in his vehicle. 


            When
Garcia thought appellant had left, she placed a 911 call and reported
appellants assault and told the 911 operator that appellant is in a green
vehicle and has a weapon.  While Garcia
was talking to the 911 operator, she heard appellant come back to the house and
hung up the phone.  The 911 operator
called back and Garcia answered and hung the phone up, telling appellant that
it was a wrong number.  Garcia testified
she did this because appellant was standing right in front of her and she was
afraid of him.

            Within
a matter of moments, the Amarillo police arrived at the residence.  Officer Moore testified that, as he
approached the door, he heard shouting and a womans scream.  When Moore knocked on the door, Garcia came
through it stating Hes inside. 
Officer Moore could see appellant in the hallway immediately adjacent to
the living room.  Moore quickly detained
appellant and placed him in the backseat of his patrol car.  Moore testified that he got appellants
identifying information and, during the process, appellant stated that the
green car was his.  Moore further
testified that he saw a methamphetamine pipe sitting on a table in the living
room.  He also observed a small black bag
sitting on the same table.  Because the
call was initially regarding a domestic dispute, Moore interviewed Garcia and
took a statement from her.  From his
interview with Garcia, Moore learned that there was a gun and narcotics in the
house.  Garcia told Moore that the gun
and narcotics belonged to appellant. 
Moore then collected the evidence. 
He found the gun in the kitchen in a zipper bag sitting on a counter.  When Moore opened the black case he found on
the living room table, it contained what he thought to be methamphetamine,
marijuana, digital scales, plastic baggies, and batteries.

            After
Moore had collected the evidence, he went to his patrol car to put the evidence
in the trunk of his patrol car.  During
this time, appellant was yelling at Moore and, after he deposited the evidence
in the trunk, Moore sat in the drivers seat and opened the sliding window to
the back seat.  At this time, appellant
stated that the gun and methamphetamine found in the house did not belong to
him.  Appellant further stated that the
drugs and gun belonged to Garcia and he was just peddling the dope for
her.  Appellant was subsequently arrested
for possession of a controlled substance.

            During
the trial, the State produced the testimony of the Amarillo Police Department
employee that took the evidence into custody and subsequently delivered it to
the Department of Public Safety lab.  The
director of the lab testified that testing showed that the contents of the
three baggies, suspected to be methamphetamine, did test positive as methamphetamine
with a total weight of 63.31 grams.  The
larger sample was found to contain a high level of a cutting agent, whereas the
two smaller samples contained substantially more pure methamphetamine.  Also testifying for the State was Deputy
Christy Phillips of the Potter County Sheriffs Office.  As part of Phillipss duties, she supervises
inmate telephone calls.  Phillips
testified that all calls from the Potter County Detention Center are
recorded.  She then identified States
exhibit 20 as a CD of telephone calls made by appellant.  The exhibit was partially played for the
jury.  Among the subjects discussed by
appellant in the telephone calls was that he had kicked a table that hurt
Garcias leg.  Further, appellant
acknowledged that one of the bags of contraband weighed 47 to 48 grams and that
half of it was fake. 
Appellant also acknowledged using the scales to weigh the larger bag.

            After
the State presented its evidence, appellant presented the testimony of the
manager of the motel where Garcia claimed that she and appellant checked
in.  The witness testified that the
records of the motel did not reveal anyone checking in on the day in question
under appellants or Garcias name. 
Further, Garcia had testified that the table appellant kicked, which
struck her leg, was a glass topped table. 
The manager stated that the motel had no glass top tables in any of the
rooms of the motel.  

            After
receiving the courts charge, the jury found appellant guilty of the offense of
possession of methamphetamine of at least four grams but less than 200 grams
and found that the possession occurred in a drug free zone.  Subsequently, having found that both
enhancement paragraphs of the indictment were true, the jury assessed
appellants punishment at confinement in ID-TDCJ for 30 years.  Appellant appeals the judgment contending
that the evidence is legally and factually insufficient to connect him to the
methamphetamine in question.  We will
affirm.

Sufficiency of the
Evidence

            Appellant
challenges both the legal and factual sufficiency of the evidence.  Therefore, we are required to conduct an
analysis of the legal sufficiency of the evidence first and then, only if we
find the evidence to be legally sufficient, do we analyze the factual
sufficiency of the evidence.  See Clewis v. State, 922 S.W.2d
126, 133 (Tex.Crim.App. 1996).

Standard of Review

            In
assessing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State,
133 S.W.3d 618, 620 (Tex.Crim.App. 2004).  In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the
jurys verdict unless it is irrational or unsupported by more than a mere
modicum of evidence.  Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988).  We measure the legal
sufficiency of the evidence against a hypothetically correct jury charge.  See Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997).

            When
an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the
evidence in a neutral light, the jury was rationally justified in finding the
appellant guilty beyond a reasonable doubt. 
See Watson v. State, 204 S.W.3d 404, 415
(Tex.Crim.App. 2006). 
In performing a factual sufficiency review, we must give deference to
the fact finders determinations if supported by evidence and may not order a
new trial simply because we may disagree with the verdict.  See id. at
417.  As an appellate court, we are not
justified in ordering a new trial unless there is some objective basis in the
record demonstrating that the great weight and preponderance of the evidence
contradicts the jurys verdict.  See
id.  Additionally, an appellate
opinion addressing factual sufficiency must include a discussion of the most
important evidence that appellant claims undermines
the jurys verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.
2003).  The Court of Criminal
Appeals has recently declared that, when reviewing the evidence for factual
sufficiency, the reviewing court should measure the evidence in a neutral
manner against a hypothetically correct jury charge.  Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley
v. State, 273 S.W.3d 260, 268 (Tex.Crim.App.
2008)).

 

Legal Sufficiency

            Appellant
contends that the State failed to present legally sufficient evidence linking
him to the methamphetamine.  To prove
appellant guilty of the indicted offense, the State had to prove: 1) appellant;
2) intentionally or knowingly; 3) possessed; 4) a controlled substance,
methamphetamine; 5) in an amount of four grams or more but less than 200
grams.  See Tex. Health & Safety Code Ann. §
481.115(d).  Possession means the actual
care, custody, control, or management of the methamphetamine in question.  See id. § 481.002(38).  To prove that appellant possessed the
methamphetamine in question, the State must prove that: (1) the accused
exercised control, management, or care over the substance; and (2) the accused
knew the matter possessed was contraband. 
See Poindexter v. State, 153 S.W.3d 402,
405 (Tex.Crim.App. 2005).  The evidence establishing possession may be
direct or circumstantial, however, it must establish
that appellants connection to the methamphetamine was more than just fortuitous.
Id. at 405-06. 
There must be evidence, other than presence alone, that would lead the
fact finder to rationally conclude beyond a reasonable doubt that appellant
exercised care, custody, control, or management of the methamphetamine.  See Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App.
2006).

            In
Evans, the Texas Court of Criminal Appeals set forth a list of links
that had been recognized by Texas courts. 
Id. at 162 n.12.  The list is non-exclusive and includes the
following:

1) the defendants presence when a search is
conducted; 2) whether the contraband was in plain view; 3) the defendants
proximity to and the accessibility of the narcotic; 4) whether the defendant
was under the influence of narcotics when arrested; 5) whether the defendant
possessed other contraband or narcotics when arrested; 6) whether the defendant
made incriminating statements when arrested; 7) whether the defendant attempted
to flee; 8) whether the defendant made furtive gestures; 9) whether there was an
odor of contraband; 10) whether other contraband or drug paraphernalia were
present; 11) whether the defendant owned or had the right to possess the place
where the drugs were found; 12) whether the place where the drugs were found
was enclosed; 13) whether the defendant was found with a large amount of cash;
and 14) whether the conduct of the defendant indicated a consciousness of
guilt.  

 

Id.  It
is not the number of links found to be present that is ultimately important,
rather it is the logical force of all of the evidence, both direct and
circumstantial.  Id.
at 162.

            In
reviewing the evidence before the jury, the first matter to consider is that
appellant was present where the contraband was found.  He was in the house approximately 10 to 15
feet from the table where the black bag containing the contraband was
found.  The methamphetamine was, however,
not in plain view.  Rather, it was located
inside the closed black bag.  The
testimony of Garcia was that the bag belonged to appellant.  Appellants brief seems to posit that the bag
could have belonged to Garcia, yet the only testimony before the jury was that
it belonged to appellant.  Appellant
contends that he denied any possession of the bag or methamphetamine to the
police officers and that they reported this in their reports.  While this statement is true, it must be
considered in light of the later admission that appellant made to Officer
Moore.  After Moore had placed the
evidence in the trunk of his patrol car, he went to the front seat and opened
the sliding window into the back seat, where appellant was seated, and
appellant stated that the gun and the methamphetamine found in the house did
not belong to him and that he was just peddling the dope for his
girlfriend.  The jury could well have
viewed this as an admission to possession of the methamphetamine.  Also, nothing in the record reveals how
appellant had knowledge of what items were found in the house other than having
prior knowledge of their existence. Thus, this statement was a conscious
acknowledgment of guilt and that he was aware that the matter possessed was
contraband.  Additionally, there are the
recorded jail house telephone calls.  One
of the calls talks about the gun in question and another
mentions that appellant knew that the larger bag of methamphetamine was
half fake.  The lab supervisor for the
DPS testified that the larger bag was approximately one-half cutting
agent.  The recorded phone calls also
contain an admission by appellant that he had kicked a table that struck Garcia
on the leg.  This was consistent with
Garcias testimony about what occurred at the motel.  Finally, Officer Moore testified that appellant
admitted that the green car parked at the house was his and the only set of keys found at the location were lying on the table
next to the black bag where the methamphetamine was found.    

            As
part of our analysis of the evidence, we first must remember that it is not the
number of links found that is important, rather it is
the logical force of the links established by the evidence that controls the
ultimate issue.  Id.  The links to appellant may be demonstrated by
direct or circumstantial evidence.  Poindexter,
153 S.W.3d at 405-06. 
Further, when we review this evidence in the light most favorable to the
verdict, as we must in a legal sufficiency review, we cannot say that the jury
acted irrationally in finding appellant guilty beyond a reasonable doubt of
possession of methamphetamine as charged in the indictment.  See Jackson, 443 U.S. at 319; Ross,
133 S.W.3d at 620. 
Appellants issue regarding the legal sufficiency of the evidence is
overruled.

 

Factual Sufficiency

            We
next review the evidence in a neutral manner to determine whether the jury was
rationally justified in finding appellant guilty beyond a reasonable
doubt.  Watson, 204
S.W.3d at 415.  When making a
factual sufficiency review, we are mindful that the jury has already passed on
the evidence and their conclusions are entitled to deference when supported by
the evidence.  Id.
at 417.  Further, we cannot simply
supplant the jurys verdict because we might disagree with it,
rather we must be able to state with particularity where the deficiency in the
evidence to support the jurys determination exists.  Id.

            Appellant
contends that the evidence is factually insufficient for the same reasons he
claimed that the evidence was legally insufficient, a failure of the evidence
to link him to the methamphetamine in question. 
However, the evidence is factually sufficient, even when viewed in a
neutral light, for the same reasons that the evidence was legally
sufficient.  Id.
at 415.  

            Appellant
asserts two primary reasons that the evidence is factually insufficient and we
will address those concerns.  Sims,
99 S.W.3d at 603. 
First, appellant spends a significant portion of his brief outlining all
of the various Evans factors that do not link him to the
methamphetamine.  Such an analysis, while
correct, misses the mark.  As stated in Evans,
it is not the number of links that is important,
rather it is the logical force of the links that are found that control the
issue.  Evans, 202
S.W.3d at 162.  Here, there are a
number of links that the evidence did not support,
however, nowhere in appellants brief is there a mention of the fact that
appellant made a directly incriminating statement to Officer Moore.  Likewise, there is no mention of the recorded
telephone conversations from jail that a jury could rationally believe indicate
that appellant knowingly possessed the drugs on the night in question.  

            Second,
appellant posits that the police chose to believe Garcias statement that the
drugs were not hers, even though she was seated directly in front of the
drugs.  However, there are two problems
with appellants contention.  The
evidence was that Garcia had come out the front door and did not return to the
house until appellant was in custody. 
Therefore, this situation is not similar to the facts of Evans,
where the defendant was seated in front of drugs that were in plain view when
the police arrived.  Further, Garcias
testimony reflected that, prior to the polices arrival, she was not seated
directly in front of the black bag, rather she was on
another sofa located in the living room of the house.  

            Finally,
appellant points out a number of inconsistencies in Garcias testimony and
opines that these show the evidence to be factually insufficient.  However, the position taken by appellant
invites the court to ignore that the jury heard this testimony and resolved any
conflicts and discrepancies against appellant. 
This is the jurys province and we cannot say that there is no support
for their conclusion in the record.  Id.  

            Accordingly,
we find that the evidence is factually sufficient to support the jurys verdict
and that the verdict is not against the great weight and preponderance of the
evidence.  Watson, 204 S.W.3d at 417. 
Appellants issue regarding the factual sufficiency of the evidence is
overruled.

 

Conclusion

            Having
overruled appellants issues, the judgment of the trial court is affirmed.  

 

                        

                                                                                    Mackey
K. Hancock

                                                                                               Justice

 

 

Do not publish.   

 

 

 

 











[1]
See Tex. Health & Safety Code
Ann. § 481.115(d) (Vernon Supp. 2009). 

 





[2]  See Tex.
Health & Safety Code Ann. § 481.134(c)(1) (Vernon
Supp. 2009).