

In the
Court of Appeals
Second Appellate District of Texas
at Fort Worth

———————————————

No. 02-19-00167-CR

———————————————

AARON RAY MORRIS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR18-0961

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Aaron Ray Morris appeals his conviction for possession of less than one gram of a controlled substance—methamphetamine. Morris raises two points on appeal: (1) whether the State presented sufficient evidence of his *mens rea*; and (2) whether the trial court misstated the presumption of innocence in the jury charge. We will affirm.

### I. Background

Morris was stopped for traffic violations while riding an electric scooter at approximately 1:15 a.m. The stop was made by Kyle Hoagland, then an officer for the City of Reno Police Department. Morris told Officer Hoagland that he was a mechanic who had just finished working on a vehicle at a local convenience store and that he was travelling to inspect a motorcycle. Officer Hoagland detected the odor of marijuana on Morris, and Morris admitted he had been smoking the substance but denied having marijuana or a marijuana pipe in his possession. Nonetheless, Morris agreed to let Officer Hoagland search his pockets and the backpack that he was carrying.

In Morris's cargo shorts pockets, Officer Hoagland found a screwdriver, pen, and other items consistent with Morris's statements regarding his work as a mechanic. But Officer Hoagland also found what appeared to be crystal methamphetamine with an accompanying meth pipe, hidden inside the plastic wrapper of a cigarette box.[1]

---

[1] Officer Hoagland later testified that he knew this to be a common method of carrying and concealing methamphetamine.

Upon discovering the methamphetamine, Officer Hoagland stated, "I guess you use meth," and placed Morris in handcuffs.

The officer then searched Morris's backpack, where he found an additional pair of shorts, another cigarette box, a variety of car-related tools and liquids, and a marijuana pipe. As Officer Hoagland dug through the backpack, Morris shook his head in apparent defeat and stated that he "d[id]n't want this life" and had "tried" to get clean but had "never been offered the opportunity" to go to rehab because "that's always been something that's been like a luxury or something that . . . I can't afford." When Officer Hoagland asked Morris how long he had "used for," Morris did not respond. And when he repeated the question later in their conversation, Morris apologized and stated that he "c[ould]n't answer that question." Officer Hoagland asked why Morris could not answer, and Morris shook his head and said, "I've had a lot on my plate," and then went on to explain his recent personal troubles.

After Officer Hoagland completed his search, he allowed Morris to call a friend to pick up his scooter and backpack. As Morris did so, he told his friend that the officer "found some stuff in my pocket."

Morris was subsequently indicted for possession of a controlled substance— namely, methamphetamine—in an amount of less than one gram. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), .115(a), (b). At trial, the State offered the video footage from Officer Hoagland's dashboard and body cameras into evidence and played the portion depicting the events recited above for the jury. The State relied heavily on this

footage as well as the testimony of Officer Hoagland. The State briefly called two other witnesses—to establish the chain of custody for the evidence and the laboratory test results for the crystal methamphetamine found on Morris—before resting its case. Morris rested without calling any witnesses or presenting any additional evidence.

The trial court then charged the jury. The charge repeatedly reminded the jury that it must acquit Morris unless it found that the State had carried its burden of proof:

> Now, if you find from the evidence beyond a reasonable doubt that . . . [Morris committed the offense] then you will find the defendant guilty as charged.
>
>     Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant "Not Guilty".
>
>     . . . .
>
>     In all criminal cases, the burden of proof is on the State, and the defendant is presumed to be innocent until the defendant's guilt is established by legal evidence beyond a reasonable doubt; and in case you have a reasonable doubt of the defendant's guilt, you will acquit the defendant and say by your verdict "not guilty".
>
>     . . . .
>
>     All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense, gives rise to no inference of guilt at his trial.
>
>     The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

. . . .

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you and these instructions, you will acquit him and say by your verdict "not guilty".

Neither party objected to the charge.

With these instructions from the court, the jury deliberated less than two hours before returning a guilty verdict. Morris then pleaded true to the State's two punishment enhancements,[2] and the jury assessed Morris's punishment at three years' confinement. Tex. Penal Code Ann. §§ 12.34, 12.425(a).

## II. Discussion

On appeal, Morris argues that (1) there was insufficient evidence of his *mens rea* and (2) the jury charge misstated the presumption of innocence.[3]

---

[2]The State relied on Morris's two prior convictions for possession of methamphetamine and debit card abuse to enhance his punishment range to that of a third-degree felony. *See* Tex. Penal Code Ann. § 12.425(a).

[3]Morris raises his points in the opposite order, first challenging the trial court's charge on the presumption of innocence, then arguing that there is insufficient evidence of his *mens rea*.

## A. Sufficiency of the Evidence

Morris challenges the sufficiency of the evidence offered to prove that his possession of methamphetamine was done intentionally or knowingly.

### 1. Standard of Review and Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

"[A] person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1"—a list that includes methamphetamine. Tex. Health & Safety Code Ann. § 481.115(a); *see also id.* § 481.102(6). The essential elements of unlawful possession of a controlled substance are well established: (1) "the accused exercised care, control, and management over the contraband"; and (2) "the accused knew the matter was contraband." *Ex parte Lane*, 303 S.W.3d 702, 709 (Tex. Crim. App. 2009); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* Tex. Penal Code Ann. § 6.01 (requiring a voluntary act as an element of an offense, and specifically stating that for possession to be voluntary the possessor must knowingly obtain or receive the thing possessed or be aware of the possessor's control of the thing for a sufficient time to permit him to terminate his control); *Ramirez-Memije v. State*, 444 S.W.3d 624, 627–28 (Tex. Crim. App. 2014) (stating

6

that criminal responsibility for a possession offense requires that a person voluntarily engage in the possession with the mental state required for the offense, that the voluntary act of possession is shown by care, custody, control, or management, that "knowingly receiving an object is a voluntary act," and that "knowing the forbidden nature of the object that is knowingly possessed is the culpable mental state").

## 2. Evidence of *Mens Rea*

Morris summarily asserts that the State "wholly failed to provide evidence on intent" and thus "failed to prove that he possessed a controlled substance intentionally or knowingly."[4] But Morris does not specify what knowledge or intent he allegedly lacked—knowledge that the cigarette box was in his pocket, knowledge that the cigarette box contained a crystal substance, knowledge that the crystal substance was methamphetamine, or knowledge of something else. Although both knowledge of possession and knowledge of the nature of the substance possessed are required to convict a defendant, the latter is traditionally recited as the *mens rea* requirement for the offense and is thus the element Morris's ambiguous sufficiency challenge presumably intends to target. *See Herrera v. State*, 561 S.W.2d 175, 179 (Tex. Crim. App. 1978) ("It is well established that in order to prove possession of a controlled substance the State must prove beyond a reasonable doubt that an appellant exercised actual care, control[,]

---

[4]Morris's one-page argument regarding evidentiary sufficiency includes only the two sentences partially quoted above, the *Jackson* standard of review, and a request that we reverse and render.

and management over the contraband and that an appellant had knowledge that the substance was contraband."); *cf. Ramirez-Memije*, 444 S.W.3d at 627–28. Nevertheless, construing his brief liberally, we address the evidence as to both elements of the offense.

The State—following Morris's lead—overlooks the distinction between evidence that shows knowledge of possession and evidence that shows knowledge of the nature of the substance possessed and broadly argues that, following precedent from this court, the fact that contraband was found in Morris's clothing was sufficient, standing alone, to support a finding that Morris possessed all knowledge and intent necessary for the crime. The State's argument overextends our prior rulings. Unpublished opinions[5] from this court have indeed recognized that, in the absence of evidence to the contrary, the presence of an item on a defendant's person supports an inference that he knew the item was in his custody. *See Lester v. State*, No. 02-16-00288-CR, 2018 WL 3763897, at *5 (Tex. App.—Fort Worth Aug. 9, 2018, pet. ref'd) (mem. op., not designated for publication) (holding officer's observation of bags of methamphetamine falling from Lester's pocket was sufficient to support an inference that Lester knew he possessed the bags); *Yates v. State*, No. 02-14-00516-CR, 2015 WL 4154168, at *2 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op., not designated for publication)

---

[5]Unpublished opinions have no precedential value. Tex. R. App. P. 47.7(a). Nonetheless, we consider unpublished opinions with similar facts and reasoning instructive and cite them for guidance as to the application of settled law. *See* Tex. R. App. P. 47.4 (directing appellate courts to designate an opinion as a memorandum opinion when "the issues are settled").

(holding Yates's exclusive possession of the bag of contraband in his pocket was sufficient to establish that he knew he was exercising control, management, or care over the bag); *see also Salinas v. State*, 479 S.W.2d 913, 914–15 (Tex. Crim. App. 1972) (holding that defendant's possession of tobacco package containing heroin, which he asked a jailer to pass to an inmate, was sufficient to support finding that the defendant knew he possessed the tobacco package and its contents).  But we have not applied this rule to hold that the presence of an item on a defendant's person is sufficient evidence of his knowledge that the item is contraband.  *See Lester*, 2018 WL 3763897, at *5 (relying on factors and circumstances apart from possession for holding that the evidence was sufficient to prove Lester's *mens rea* as to the nature of the methamphetamine in his possession); *Yates*, 2015 WL 4154168, at *3 (pointing to the visibility of the substance as evidence that Yates knew the substance in his pocket was contraband).

Regardless, the record contains sufficient evidence that Morris had both forms of knowledge in this case, and we need not rely solely on the fact that the contraband was found on Morris's person for our conclusion as to either form.  There was ample circumstantial evidence showing Morris's knowledge that he possessed the items in his pocket—including the package of cigarettes containing the crystal substance—and his knowledge that the crystal substance was methamphetamine.  *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989) ("Establishment of culpable mental states is almost invariably grounded upon inferences to be drawn by the factfinder from the attendant circumstances."); *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978)

9

("[P]roof of a culpable mental state generally relies on circumstantial evidence."); *Hernandez v. State*, 470 S.W.3d 862, 870 (Tex. App.—Fort Worth 2015, pet. ref'd) (quoting *Dillon*); *see also Sanders v. State*, No. 02-18-00539-CR, 2020 WL 5242436, at \*5 (Tex. App.—Fort Worth Sept. 3, 2020, pet. filed) (mem. op., not designated for publication).

First, to the extent Morris intends his *mens rea* challenge as a denial that he knew of the items in his pocket, the jury heard evidence and saw video footage indicating otherwise. Before Officer Hoagland searched Morris's person, he asked what Morris had in his pockets. Rather than stating he did not know, Morris shrugged in a nonchalant manner and stated his pockets contained "tools" such as a "screwdriver." The officer indeed found a screwdriver, confirming Morris's awareness of the items he was carrying. And, consistent with this awareness, Morris did not express surprise when Officer Hoagland found a cigarette package in his pocket, nor when the officer opened the cigarette package and discovered a crystal substance and glass pipe, and he did not deny that the items were his. Morris's interactions with Officer Hoagland gave no indication that he had borrowed the shorts he was wearing or somehow inadvertently possessed the items in his pockets. Rather, when relaying his situation to the friend who later came to retrieve his scooter, Morris explained that the officer "found some stuff in my pocket." Even on appeal, Morris has not identified any evidence of

10

inadvertent possession in the record.[6] *See Yates*, 2015 WL 4154168, at *2 (holding that, "in the absence of evidence that Yates inadvertently exercised custody over the baggie and its contents," the evidence was sufficient to support a finding that Yates knew he possessed the bag in his pocket); *cf. Ramirez-Memije*, 444 S.W.3d at 628 (stating that "[i]f there [had been] evidence that the [contraband] had been slipped into Appellant's bag without his knowledge, then there [might have] be[en] a question of voluntary possession," but holding that Appellant's undisputed awareness of the item in his possession satisfied the voluntary-act requirement regardless of whether he knew the item was contraband). Thus, the evidence was sufficient to support a finding that Morris knew he had a box of cigarettes containing a crystal substance in his custody.

Second, to the extent Morris intends his *mens rea* challenge as a denial that he knew the nature of the substance in his possession, the jury's conclusion that Morris knew the substance was contraband is supported by evidence of the visibility of the substance, Morris's attempt to conceal it, the presence of an accompanying

---

[6]Morris's trial counsel speculated regarding whether the "baggy" cargo shorts Morris was wearing belonged to him, implied that the presence of a second pair of shorts and a second cigarette pack in Morris's backpack somehow indicated a lack of ownership over those on his person, argued that Morris's consent to a search indicated that he did not know about the methamphetamine, and questioned the State's failure to fingerprint the cigarette package containing the methamphetamine. But Morris has not reiterated these arguments on appeal. Moreover, despite the arguments of Morris's trial counsel, there was no evidence introduced to suggest that Morris's shorts or the contents of his pockets belonged to another individual.

methamphetamine pipe, and Morris's interactions with Officer Hoagland after the contraband was discovered.

The fact that the methamphetamine was visible to the naked eye supported the conclusion that Morris knew the substance was contraband. Both this court and the Court of Criminal Appeals have so held. *See King v. State*, 895 S.W.2d 701, 704 (Tex. Crim. App. 1995) (noting that the fact that "the residue containing the cocaine was visible on the 'crack pipe'" supported finding that the defendant knew the substance in his possession was cocaine); *Lester*, 2018 WL 3763897, at *5 (recognizing that "numerous cases have relied on the visibility of the substance in assessing its possessor's knowledge," and holding that the evidence was sufficient to support knowing possession in case involving seven baggies of crystalline rocks of methamphetamine visible to the naked eye); *Yates*, 2015 WL 4154168, at *3 ("[N]umerous cases have held that the visibility of the contraband—that even if just a small amount is visible—is relevant to establishing that possession of that small amount was knowing."). *But see Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995) (holding that a substance need not be visible to the naked eye to support a conviction for possession of a controlled substance).

Moreover, Morris concealed the methamphetamine inside a cigarette box. Several of our sister courts, in both published and unpublished opinions, have held that such concealment is evidence of the accused's knowledge of the nature of the substance. *See Saunders v. State*, No. 13-18-00589-CR, 2020 WL 3479261, at *2 (Tex.

12

App.—Corpus Christi June 25, 2020, no pet.) (mem. op., not designated for publication) (recognizing that, "because Saunders concealed the heroin in a Visine bottle, the jury could have reasonably concluded that he intentionally or knowingly possessed the heroin"); *Hunter v. State*, No. 05-93-01527-CR, 1994 WL 605924, at *2 (Tex. App.—Dallas Nov. 2, 1994, pet. ref'd) (not designated for publication) (recognizing appellant's concealment of crack pipe containing cocaine residue in his shoe as evidence that he knowingly possessed the cocaine); *Daniels v. State*, 853 S.W.2d 749, 751 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (recognizing concealment of crack pipe as evidence supporting jury's conclusion that appellant intentionally possessed the cocaine); *see also Sneed v. State*, 875 S.W.2d 792, 795 (Tex. App.—Fort Worth 1994, no pet.) (recognizing "attempted destruction of the contraband" as one of the "[f]actors that support knowing possession" in a case where appellant attempted to conceal and dispose of cocaine capsule by putting it in his mouth and dropping it on the floor).

Morris was also carrying a glass methamphetamine pipe on his person—indeed, in the same location as the methamphetamine. We have recognized the presence of an accompanying drug pipe or other narcotic paraphernalia as an indication of an individual's knowledge that the substance in his possession is contraband. *Sneed*, 875 S.W.2d at 795 (recognizing "possession of other contraband, narcotics paraphernalia, or cutting agents" as "[f]actors that support knowing possession"); *Whaley v. State*, 660 S.W.2d 894, 899 (Tex. App.—Fort Worth 1983, pet. ref'd) (op. on reh'g) (observing

13

that "the possession of other controlled substances or narcotic paraphernalia may be relied upon as inferential evidence necessary to support a finding of [] knowledge" of the substance's nature); *see also, e.g.*, *King v. State*, 857 S.W.2d 718, 720 (Tex. App.—Houston [14th Dist.] 1993) ("[T]he cocaine was found in a *crack pipe*. The courts have always found this factor significant in showing knowing possession of cocaine."), *aff'd*, 895 S.W.2d 701 (Tex. Crim. App. 1995); *Daniels*, 853 S.W.2d at 751 (recognizing presence of crack pipe as evidence supporting jury's conclusion that appellant intentionally possessed the cocaine); *Sims v. State*, 833 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) ("Appellant's guilty knowledge is further evidenced by his possession of the cocaine inside a crack pipe found on his person.").

Morris's statements and behavior after Officer Hoagland discovered the methamphetamine lend further support to the jury's findings. Morris did not express any confusion or proclaim his innocence when Officer Hoagland, upon seeing the crystal substance, commented "I guess you use meth." Rather, after Officer Hoagland discovered the methamphetamine, Morris stated that he "d[id]n't want this life" and had "tried" to get clean but had "never been offered the opportunity" to go to rehab and "c[ould]n't afford" it. Such statements support an inference that Morris knew the substance in his pocket was contraband.

We therefore hold that Morris's conviction was supported by sufficient evidence that he knew he was in possession of the crystal substance in his pocket and that he knew the substance was methamphetamine. We overrule Morris's second point.

14

## B. Jury Charge

Additionally, Morris argues that the trial court misstated the presumption of innocence in the jury charge in violation of his rights under the federal Due Process Clause and Article 36.14 of the Code of Criminal Procedure. *See* U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 36.14. Specifically, Morris claims that the trial court misstated the presumption by instructing the jury that "the defendant is presumed to be innocent *until* the defendant's guilt is established by legal evidence beyond a reasonable doubt." [Emphasis added.] Morris argues that the presumption of innocence guaranteed by the Due Process Clause prohibits conviction unless—not until—the defendant's guilt is established beyond a reasonable doubt. He claims the word *until* implies that the accused's guilt will be proven in time while *unless* implies a precondition that may or may not be satisfied. Morris points to Texas's codifications of the presumption in Article 38.03 of the Code of Criminal Procedure and Section 2.01 of the Penal Code—both of which use *unless*—as evidence that the trial court's charge misstated the law. Tex. Code Crim. Proc. Ann. art. 38.03 ("All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."); Tex. Penal Code Ann. § 2.01 (same).

The question presented on appeal is thus whether the trial court misstated the presumption of innocence and thereby misstated the law applicable to the case by using the word *until* within the phrase "until the defendant's guilt is established" in its charge

15

to the jury on the presumption of innocence. We hold that the court did not misstate the law—either in its presumption-of-innocence instructions as a whole, or in its specific use of the word *until.*

## 1. Standard of Review and Applicable Law

The purpose of the jury charge is to inform the jury of the "law applicable to the case" and to guide the jury in its application of the law to the facts. Tex. Code Crim. Proc. Ann. art. 36.14; *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial judge is ultimately responsible for the charge's accuracy and must ensure—sua sponte—that the jury charge incorporates all of the law applicable to the criminal offense set out in the indictment, "as well as the general admonishments, including reference to the presumption of innocence, proof beyond a reasonable doubt, unanimity of the verdict, and so forth." *Delgado*, 235 S.W.3d at 249. Because Morris did not object to the trial court's charge, if we find that the trial court erred we will review the error for egregious harm. *Oursbourn v. State*, 259 S.W.3d 159, 174, 182 (Tex. Crim. App. 2008); *Almanza v. State*, 686 S.W.2d 157, 171–74 (Tex. Crim. App. 1985) (op. on reh'g).

It is undisputed—and axiomatic—that the presumption of innocence is part of the law applicable to the case and should be included in the jury charge.[7] *See Taylor v.*

---

[7]The United States Constitution does not require that an instruction on the presumption of innocence be given in every criminal trial. *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S. Ct. 2088, 2090 (1979) (per curiam) ("In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate

16

*Kentucky*, 436 U.S. 478, 483–86, 98 S. Ct. 1930, 1933–35 (1978); *Bennett v. State*, 396 S.W.2d 875, 875 (Tex. Crim. App. 1965). But the specific words a trial court uses to express the presumption are not constitutionally dictated.

Although the presumption of innocence is "a basic component of a fair trial under our system of criminal justice," it is not expressly articulated in the United States Constitution. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692 (1976); *see also* U.S. Const. amend. XIV. Indeed, this implicit presumption is not a presumption at all, nor is it correlated with actual innocence. *See Taylor*, 436 U.S. at 483 n.12, 98 S. Ct. at 1934 n.12 ("The principal inaccuracy is the fact that it is not technically a 'presumption[.]'"); *Zimmerman v. State*, 860 S.W.2d 89, 97 (Tex. Crim. App. 1993) ("[T]he presumption of innocence does not carry with it the connotation that a defendant is in fact innocent[.]"), *vacated on other grounds*, 510 U.S. 938, 114 S. Ct. 374 (1993); *see also Riordan*, 2017 WL 3378889, at *12 (citing *Taylor* and *Zimmerman*). Rather, the expression is "an inaccurate, shorthand description" of the "doctrine that allocates the burden of proof in criminal trials" and the "'assumption' that is indulged in the absence of contrary evidence" which gives the accused the right "to 'remain inactive and secure, until the

---

the Constitution."); *see also Riordan v. State*, No. 03-16-00297-CR, 2017 WL 3378889, at *12 (Tex. App.—Austin Aug. 4, 2017, no pet.) (mem. op., not designated for publication). However, the Texas Court of Criminal Appeals has held that "a charge upon this subject is essential in every criminal case." *Bennett v. State*, 396 S.W.2d 875, 875 (Tex. Crim. App. 1965) (quoting *Sessums v. State*, 237 S.W.2d 629, 630 (Tex. Crim. App. 1951)).

prosecution has taken up its burden.'" *Bell v. Wolfish*, 441 U.S. 520, 533, 99 S. Ct. 1861, 1870–71 (1979); *Taylor*, 436 U.S. at 483 n.12, 98 S. Ct. at 1934 n.12; *see also Riordan*, 2017 WL 3378889, at *12. The presumption of innocence is thus not narrowly confined to a singular correct phrasing. *See Taylor*, 436 U.S. at 485–86, 98 S. Ct. at 1935 (acknowledging that "use of the particular phrase 'presumption of innocence'—or any other form of words—[is] not [] constitutionally mandated"). A jury charge on the presumption need not track Texas's statutory codifications of the presumption; instead, a charge is sufficient to protect a defendant's rights if it uses language substantially similar to that in Section 2.01 and Article 38.03 or if it otherwise covers every element encompassed within these statutes. *Carr v. State*, 600 S.W.2d 816, 818 (Tex. Crim. App. [Panel Op.] 1980) (holding trial court did not fundamentally err by failing to track Section 2.01 in jury charge); *DeRusse v. State*, 579 S.W.2d 224, 234 (Tex. Crim. App. [Panel Op.] 1979) (holding trial court did not err by failing to give requested charge tracking Section 2.01 because the charge "was substantially similar to that requested by appellant and adequately protected appellant's rights"); *Sweaney v. State*, 632 S.W.2d 932, 934–35 (Tex. App.—Fort Worth 1982, no pet.) (holding trial court did not err by failing to track Section 2.01 where charge used substantially similar language); *Bodiford v. State*, 630 S.W.2d 847, 852–53 (Tex. App.—Fort Worth 1982, pet. ref'd) (holding trial court did not err by failing to track Section 2.01 because the charge addressed the rights codified in the statute); *see also, e.g.*, *Beckett v. State*, No. 05-10-00331-CR, 2012 WL 955358, at *9–11 (Tex. App.—Dallas Mar. 22, 2012, pet. ref'd) (not designated for

18

publication) (citing *DeRusse* and *Sweaney*, and holding that court's charge on the presumption of innocence adequately protected defendant's rights despite omission of portions of statutorily codified presumption); *Gigliobianco v. State*, 179 S.W.3d 136, 143–44 (Tex. App.—San Antonio 2005) (holding, based on the totality of the circumstances, that trial court did not violate the defendant's constitutional or statutory rights even though the charge did not include a specific instruction on the presumption of innocence and the trial court refused to include defendant's requested instruction on the presumption), *aff'd*, 210 S.W.3d 637 (Tex. Crim. App. 2006).

### 2. Charge as a Whole

First, Morris's challenge to the use of *until* ignores the remainder of the court's charge. Just paragraphs after the challenged portion of the instruction, the trial court quoted from the Penal Code and Code of Criminal Procedure—using Morris's desired *unless* language: "All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." *See* Tex. Code Crim. Proc. Ann. art. 38.03; Tex. Penal Code Ann. § 2.01. Then, after tracking the *unless* language of the statutes verbatim, the court rephrased and reiterated the presumption using the term *unless* again: "The presumption of innocence alone is sufficient to acquit the defendant *unless* the jurors are satisfied beyond a reasonable doubt of the defendant's guilt." [Emphasis added.] To drive home the point that the defendant's guilt was conditioned on the State's not-to-be-assumed satisfaction of its burden, the court even expressly contemplated the State's failure to

19

prove Morris's guilt, stating that "[t]he prosecution has the burden of proving the defendant guilty . . . and if it fails to do so, you must acquit the defendant." Morris has not alleged, nor can he plausibly claim, that the singular use of the word *until* in the challenged portion of the charge was so misleading as to outweigh the trial court's repeated recitations and reaffirmations of the presumption of innocence using the statutory *unless* language elsewhere in the charge. The trial court's charge, read as a whole, was sufficient to protect Morris's rights as to the presumption of innocence. *See, e.g.*, *Beckett*, 2012 WL 955358, at *10 (citing *DeRusse*, 579 S.W.2d at 234, and *Sweaney*, 632 S.W.2d at 934–35, for the rule that "[a] jury charge that substantially complies with [A]rticle 2.01 protects a defendant's rights"); *Stewart v. State*, 162 S.W.3d 269, 276–77 (Tex. App.—San Antonio 2005, pet. ref'd) (holding, based on the totality of the circumstances, that the trial court did not err by denying requested instruction on the presumption of innocence); *Hernandez v. State*, 107 S.W.3d 41, 45–46 (Tex. App.—San Antonio 2003, pet. ref'd) (holding trial court did not err by failing to give requested jury instruction on the presumption of innocence because the totality of the circumstances—including proper jury instructions regarding the burden of proof and jury's confinement to the evidence presented—ensured that the defendant received a constitutionally fair trial); *Bodiford*, 630 S.W.2d at 852–53 (holding trial court did not err by failing to track Section 2.01 because "viewed as a whole the charge amply covers every element of [Section] 2.01 with which the jury should be concerned").

### 3. Use of *Until*

Regardless, we do not agree with Morris's contention that the trial court's use of the word *until* misstated the presumption of innocence. Indeed, at least two of our sister appellate courts have rejected the interpretation Morris advances and have held that the words *until* and *unless* are substantially similar for purposes of a jury instruction on the presumption of innocence. *See Riordan*, 2017 WL 3378889, at *14 ("Appellant's argument, focusing on the use of 'until' rather than 'unless' in the . . . instruction regarding the presumption of innocence, makes a distinction without a material difference."); *Hughes v. State*, No. B14-91-01331-CR, 1993 WL 74746, at *4 (Tex. App.—Houston [14th Dist.] Mar. 18, 1993, pet. ref'd) (not designated for publication) (holding that trial court did not err by refusing to use the phrase *unless or until* rather than *until* in charging the jury on the presumption of innocence and concluding that, "[i]n light of the whole charge, any difference in the use of 'unless' and 'until' is *de minimus*"); *White v. State*, No. A14-87-01018-CR, 1989 WL 34417, at *1 (Tex. App.—Houston [14th Dist.] Apr. 13, 1989, pet. ref'd) (not designated for publication) (holding that trial court's use of *until* in phrasing the presumption of innocence was not a comment on the weight of the evidence and noting that nothing in the record indicated that defense counsel or "the jury even noticed the subtle difference between the words 'unless' and 'until'"); *see also Randolph v. State*, No. 01-08-00266-CR, 2008 WL 5178860, at *2–3 (Tex. App.—Houston [1st Dist.] Dec. 11, 2008, no pet.) (mem. op., not designated for publication) (holding that trial court did not fundamentally err by giving

voir dire instruction on presumption of innocence using *until* rather than *unless* and noting that "nothing in the record indicates that the venire meaningfully distinguished 'unless' from 'until' in th[is] context"). Both terms accurately convey "the fundamental principle that a person may be convicted of a crime only when the State meets i[t]s burden of proving each element of the offense beyond a reasonable doubt, without any burden placed on the accused to prove innocence." *Riordan*, 2017 WL 3378889, at *13–14.[8]

In fact, for more than a century—beginning with the state's first codification of the Penal Code and Code of Criminal Procedure in 1856—Texas statutes used the challenged *until* language. *See* Act approved Aug. 28, 1856, 6th Leg., § 1, art. 11, 1856 Tex. Crim. Stat. 1, 3, (Galveston, The News Office 1857) (eff. Feb. 1, 1857) (originally codified at Tex. Penal Code art. 11) ("Every person accused of an offence shall be presumed to be innocent until his guilt is established to the satisfaction of those whose province it is to try him."); Act approved Aug. 26, 1856, 6th Leg., § 1, art. 640, 1856 Tex. Crim. Stat. 4, 122 (Galveston, The News Office 1857) (eff. Feb. 1, 1857) (originally codified at Tex. Code Crim. Proc. art. 640) ("A defendant in a criminal cause is presumed to be innocent until his guilt is established by legal evidence; and in case of reasonable doubt as to his guilt he is entitled to be acquitted."); *see also Riordan*, 2017

---

[8]Though *Riordan* has no precedential value, we find its well-reasoned analysis instructive. *See* Tex. R. App. P. 47.7(a).

WL 3378889, at *13–14 (discussing the historical codifications of the presumption of innocence in analysis of a similar argument regarding *unless* and *until*). Texas's statutory use of *until* rather than *unless* continued through the early 1970s. Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 889 (S.B. 34) (eff. Jan. 1, 1974) (recodifying presumption in Penal Code and using *unless* language); Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 466 (S.B. 107) (eff. Jan. 1, 1966) (recodifying presumption in Code of Criminal Procedure and using *until* language); Acts 1925,[9] 39th Leg., R.S., S.B. 7, § 2, art. 705, 1925 Tex. Crim. Stat. 1, 107 (originally codified at Tex. Code Crim. Proc. art. 705) (repealed and recodified 1965) (codifying presumption of innocence and using *until* language); Acts 1925, 39th Leg., R.S., S.B. 7, § 1, art. 9, 1925 Tex. Crim. Stat. 1, 4 (originally codified at Tex. Penal Code art. 9) (repealed and recodified 1973) (codifying presumption of innocence and using *until* language); *see also* Tex. Code Crim. Proc. Ann. art. 38.03 note (listing historical versions of and changes to Article 38.03); Tex. Penal Code Ann. § 2.01 note (listing historical versions of and changes to Section 2.01); *Riordan*, 2017 WL 3378889, at *13–14. The Penal Code provision switched to *unless* in 1974 as part of that statute's recodification, and the Code of Criminal Procedure was amended to match in 1981. Act of May 31, 1981, 67th Leg., R.S., ch. 539, § 1, 1981 Tex. Gen. Laws 2247, 2247 (H.B. 866) (eff.

---

[9]The 1925 Penal Code and Code of Criminal Procedure were not printed in the General and Special Laws of Texas.

June 12, 1981); Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 889 (S.B. 34) (eff. Jan. 1, 1974).

Although Morris cites this statutory shift from *until* to *unless* as a significant substantive change in Texas law, we reach the opposite conclusion. Morris has not identified any Texas case law interpreting the statutory shift from *until* to *unless* as a fundamental alteration of the presumption of innocence in criminal cases, nor has he identified any case law interpreting the pre-1974 codification of the presumption as a watered-down form of the constitutional guarantees it encapsulates. Moreover, for a period of approximately seven years, Texas statutes used both words to describe the presumption of innocence—the Penal Code used *unless* while the Code of Criminal Procedure used *until*. *See* Act of May 31, 1981, 67th Leg., R.S., ch. 539, § 1, 1981 Tex. Gen. Laws 2247, 2247 (H.B. 866) (eff. June 12, 1981) (using *unless*); Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 889 (S.B. 34) (eff. Jan. 1, 1974) (using *unless*); Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 466 (S.B. 107) (eff. Jan. 1, 1966) (using *until*). We are unaware of any Texas cases from this time period holding that the two statutes directly conflicted such that the later-adopted *unless* wording in Section 2.01 controlled over or implicitly repealed the *until* phrasing in Article 38.03. *See* Tex. Gov't Code Ann. § 311.025(a) ("[I]f statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails."), § 312.014(a) (same). Rather, the two codifications peacefully coexisted and the courts upheld both as accurate and

24

substantially similar wordings of the presumption of innocence.[10]  For example, in 1979—while Section 2.01 used the word *unless* and Article 38.03 still used *until*—the Court of Criminal Appeals analyzed a jury charge with *until* language tracking then-current Article 38.03.[11]  *See DeRusse*, 579 S.W.2d at 234.  The appellant had asked the trial court to give the following proposed charge, the first two sentences of which mirrored the *unless* phrasing of the presumption in Section 2.01 of the Penal Code:

> All persons are presumed to be innocent and no person may be convicted of an offense *unless* each element of the offense is proved beyond a reasonable doubt.  The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.  In case you have a reasonable doubt as to Defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him.

*Id.* at 234 (emphasis added).  The trial court refused the proposed charge and instead submitted the following, the last sentence of which largely tracked the *until* phrasing in then-current Article 38.03:

> You are instructed that the grand jury indictment is not evidence of guilt.  It is the means whereby a Defendant is brought to trial in a felony

---

[10]Texas courts also upheld charges that contained neither *unless* nor *until*.  *See, e.g.*, *Sweaney*, 632 S.W.2d at 934–35 (holding that charge containing the phrase, "the defendant is presumed to be innocent, and the burden of proof is upon the State of Texas to establish his guilt . . . beyond a reasonable doubt" was substantially similar to the language in Section 2.01).

[11]Although the precise date of the trial is unclear from the Court's opinion, the offense occurred in 1975 and the Court of Criminal Appeals issued its opinion in 1979.  *See DeRusse*, 579 S.W.2d at 227.  Thus, the trial necessarily occurred during the time period in which the language of Section 2.01 differed from that of Article 38.03.

prosecution. It is not evidence, nor can it be considered by you in passing upon the innocence or guilt of this Defendant.

In all criminal cases the burden of proof is on the State. The Defendant in a criminal case is presumed to be innocent, *until* his guilt is established by legal evidence, beyond a reasonable doubt, and if you have a reasonable doubt as to the guilt of the Defendant, you must acquit him and say by your verdict "not guilty."

*Id.* at 234 (emphasis added). Citing both Section 2.01 and Article 38.03, the Court of Criminal Appeals held that "[t]he charge given by the trial court"—using *until*—"was substantially similar to that requested by appellant"—using *unless*—"and adequately protected appellant's rights with regard to the matters contained therein." *Id.* at 234.

Given the above considerations—the imprecise nature of the so-called presumption of innocence, the holdings of our sister courts rejecting similar challenges to jury instructions based on the use of *until* rather than *unless*, the statutory history of the presumption, and the Court of Criminal Appeals' analysis in *DeRusse*—Morris's argument is unpersuasive. Though his concern for linguistic clarity is admirable, the presumption of innocence is not so singularly defined as to require the use of *unless* rather than *until*. As the Third Court of Appeals has noted, "[t]he words are often used interchangeably" in the presumption-of-innocence context. *Riordan*, 2017 WL 3378889, at *14.

We thus hold that the trial court did not misstate the presumption of innocence in its jury charge. The phrasing of the presumption using the word *until* was substantially similar to Article 38.03 and Section 2.01, and, regardless, the court

26

repeatedly instructed the jury on the presumption using the statutory *unless* language.

Morris's first point is overruled.

## III. Conclusion

Having overruled both of Morris's points, we affirm the judgment of conviction.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 4, 2021